**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATT GREEN, | : |
| | : Civil Action No. 09-1600 (AET) |
| Plaintiff, | : |
| | : |
| v. | : **OPINION** |
| | : |
| JON CORZINE, et al., | : |
| | : |
| Defendants. | : |

**APPEARANCES**:

    MATT GREEN, Plaintiff <u>pro</u> <u>se</u>
    #315128
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 08625

**THOMPSON**, District Judge

    Plaintiff Matt Green ("Green"), currently a state inmate confined at the New Jersey State Prison ("NJSP") in Trenton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998). The Clerk of the Court was directed to file Green's Complaint submitted and identified as docket entry no. 1 in this action, pursuant to this Court's Order filed April 6, 2009.[1]

---

[1] Green had filed a Complaint in conjunction with several other inmates in an earlier, related action, <u>Green, et al. v.</u>

Accordingly, at this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part at this time.

I.  BACKGROUND

Green brings this action against numerous defendants as follows: Jon Corzine, Governor of the State of New Jersey; George Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Lydell Sherrer, Acting Ass't. Commissioner of the NJDOC's Division of Operations; Robert Paterson, Director of NJDOC's Division of Operations; Thomas Farrell, Supervisor of the NJDOC's Health Services Unit; Dr. Ralph Woodward, NJDOC Medical Director; Michelle Ricci, NJSP Administrator; Jeffrey Bell, NJSP Ass't. Superintendent; Peter Ronoghan, NJSP Business Manager;

---

Corzine, et al., Civil No. 08-2585 (AET).  That earlier Complaint had sought class certification, which was denied by this Court in an Order filed June 24, 2008.  The June 24, 2008 Order directed that a new and separate case be docketed for Green and that the original complaint submitted in Civil No. 08-2585 be docketed in this instant matter as Green's Complaint and that it be deemed received by the Clerk on August 12, 2008.  The April 6, 2009 Order noted that the Green Complaint was to be screened pursuant to federal statutes, namely, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

Vaughn Hinman, NJSP Storekeeper; Correctional Medical Services, Inc. ("CMS"); David Meeker, CMS Vice-President of Operations; Dr. Lionel Anicette, CMS Statewide Medical Director; Jason Pugh, CMS Health Services Administrator at NJSP; Dr. Allen Martin, CMS Medical Director at NJSP; Dr. Abu Ashan, CMS Medical Director at NJSP; Dr. Ihuoma Nwachukwu, CMS Staff Physician at NJSP; John Doe 1 and 2 defendants; Donique Ivery, APN, CMS nurse at NJSP; University of Medicine and Dentistry of New Jersey ("UMDNJ"); Mid-Atlantic Physician's Association; Cocco Enterprises; and Anthony Minelli, CEO of Cocco Enterprises. (Complaint, Caption and ¶¶ 14-37). The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Plaintiff Green's factual allegations are set forth in paragraphs 58-75 of the Complaint. In sum, Plaintiff states that due to his unusually wide feet, he requires prescription orthopedic shoes, in size 10EEE. Upon his arrival at the New Jersey State Prison, his special shoes were confiscated. He was issued regular size 10 shoes, which caused him pain and ulcerations in his feet, and radiating pain in his ankles, knees, hips and back.

Eventually, after being seen in medical, Plaintiff was given a prescription for orthopedic, 10EEE boots and exercise shoes.

3

However, during a lockdown in August 2006, the boots and sneakers were seized and never returned. Plaintiff was given a pair of regular size 10 shoes, and again began to suffer injuries. His condition became so painful that he could not go to the mess hall for meals, or attend other programs. He lost weight and his health deteriorated.

Plaintiff contacted medical and was told that the Department of Corrections was revisiting its policy on prescribing orthopedic shoes as a result of budget cuts, and that his prescription was no longer valid. A podiatrist saw Plaintiff and although recommended the orthopedic shoes, the podiatrist told Plaintiff that he was under strict orders by the defendants to issue written prescriptions for orthopedic shoes.

Plaintiff continues to be forced to wear regular sized shoes which causes him injuries and affects his ability to exercise and partake in recreation.

Green asserts claims under 42 U.S.C. § 1983 that defendants have denied him medical care and have been deliberately indifferent to his serious medical needs, in violation of his rights under the Eighth and Fourteenth Amendments. (Compl., Counts I and II). In addition, Green alleges that he has been subjected to unlawful discrimination because of his disabilities by being excluded from or denied benefits, services, programs and activities in violation of the American with Disabilities Act, 42

U.S.C. § 12132 (2000)("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (2000)("RHA"). (Compl., Counts VI and VII).[2]

Green further asserts that defendants have violated the New Jersey Constitution, and in particular, the New Jersey Civil Rights Act, as well as New Jersey state public policy. (Compl., Counts VIII and IX). He further alleges common law tort claims of medical malpractice, negligence, and negligent infliction of emotional distress. (Compl., Counts XI, XII and XIII). Green also asserts a claim of breach of contract for third party beneficiaries against the CMS defendants and NJDOC defendants. (Compl., Count X).

Green seeks compensatory and consequential damages in excess of $400,000.00, plus punitive damages. He also seeks injunctive relief, namely, that he be provided necessary and proper medical care for his orthopedic condition.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim

---

[2] Count V does not pertain to Green.

upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Here, plaintiff is a prisoner who is proceeding in forma pauperis, and he is asserting claims against government prison officials with respect to incidents occurring while he was confined at New Jersey State Prison.  Consequently, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because he is proceeding as an indigent, and under 28 U.S.C. § 1915A because he is a prisoner seeking redress from government officials and entities.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

In short, a pro se prisoner plaintiff simply need comply with the pleading requirements of Rule 8(a)(2)(complaint should contain "a short and plain statement of the claim showing that

the pleader is entitled to relief"). See Erickson, 127 S.Ct. at 2200. Thus, a complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson, 127 S.Ct. at 2200 (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculation level. ...

Bell v. Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955, 1964-65 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Accordingly, a pro se prisoner plaintiff may allege only enough factual matter (taken as true) to suggest the required elements of the claim(s) asserted. Twombly, supra; Phillips v. Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV. ANALYSIS

A. ADA and RHA Claims

This Court finds that Green has failed to state a claim for relief under either the ADA or the RHA, at this time, as asserted in Counts VI and VII of the Complaint.

The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the RHA provides that:

> [n]o otherwise qualified individual with a disability in the
> United States ... shall, solely by reason of her or his
> disability, be excluded from the participation in, be denied

9

>  the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by and Executive agency ... .

29 U.S.C. § 794.  Cases interpreting the language of the ADA and that of the RHA concluded that the applicable legal tests created by these statutes are interchangeable.  <u>Calloway v. Boro of Glassboro Dep't of Pol.</u>, 89 F. Supp.2d 543, 551 (D.N.J. 2000).  To state a claim for violation of either the ADA or RHA, plaintiff must show that he: (a) has a disability, (b) is otherwise qualified to participate in a program, and (c) was denied the benefits of the program or discriminated against because of the disability.[3]  <u>See</u> <u>Millington v. Temple Univ. Sch. Of Dentistry</u>, 261 Fed. App. 363, 365 (3d Cir. 2008).  Here, Green alleges that his condition of having wide feet, and injuries due to being denied proper shoes, are serious medical conditions that qualify as a "disability" within the meaning of the ADA and RHA, because they "substantially limit[] one or more  ... major life activities."  42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B).  However, Green does not assert that he otherwise qualified for, but was excluded from any specific program or service provided by NJSP or was otherwise discriminated against by reason of his disability.[4]  <u>See</u> <u>Iseley v. Beard</u>, 200 Fed. App. 137, 142 (3d

---

[3] Both the ADA and the RHA apply in the prison context. <u>See</u>, <u>e.g.</u>, <u>Bartolomeo v. Plymouth County House of Corr.</u>, 2000 U.S. App. Lexis 20915, at *5 (1st Cir., Aug. 16, 2000).

[4] Even if this Court is to construe Green's allegation (that he was denied prescribed or recommended orthopedic shoes,

Cir. 2006). Thus, Green has not asserted a viable claim at this time under either the ADA or the RHA, and these claims will be dismissed without prejudice accordingly.

B. <u>Denial of Medical Care Claims</u>

In Counts I to III, Green asserts claims that he was denied medical care and treatment in violation of the Eighth and Fourteenth Amendments.

The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976); <u>Rouse v. Plantier</u>, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. <u>Estelle</u>, 429 U.S. at 106; <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if

---

etc.) extra-broadly, no statement was made in the Complaint suggests that inmates with other disabilities (or those without any disabilities) did not suffer identical or comparable denials as a result of the State's alleged budget-cutting measures.

11

those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly,

12

"mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v.

13

O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Green alleges that he has foot and other injuries due to defendants' refusal to provide him with proper shoes. This may support the first prong under Estelle, that he suffers a serious medical condition. Moreover, his allegations that orthopedic shoes have been prescribed and recommended by different physicians but denied by the defendants for non-medical reasons, may support a claim of deliberate indifference to satisfy the second prong under Estelle. Accordingly, this Court will allow these claims to proceed at this preliminary screening stage.[5]

---

[5] This Court does not make any finding at this time with respect to whether these claims may be time-barred as noted in its June 24, 2008 Order filed in the earlier related action, Civil No. 08-2585 (AET). Such assertion is an affirmative defense that must be raised by defendants, if applicable. The Court does note, however, that Green alleges repeated and continuing acts by defendants in denying him medical care and treatment that would suggest equitable tolling of the statute of limitations under the continuing violations doctrine.

The Third Circuit has recognized the continuing violations doctrine as an equitable exception to the timely filing requirement. Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). Although the doctrine is most frequently applied in employment discrimination claims, it also may be used to bring a § 1983 claim. Id. Under the continuing violations doctrine, "[w]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time-barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).

To benefit from this rule, Green must show that the defendants' conduct is more than the occurrence of isolated or

14

C.  State and Common Law Claims

Finally, the Court will exercise supplemental jurisdiction over Green's state law and common law tort and breach of contract claims at this time because they are sufficiently related to his proceeding § 1983 claims.  28 U.S.C. § 1367(a).  The Court finds summary dismissal at this sua sponte screening stage to be premature because such claims involve issues of fact that are not susceptible to summary disposition at this early juncture.

---

sporadic acts.  Cowell, 263 F.3d at 292.  In making this determination, the court should consider at least three factors:

> (1) subject matter - whether the violations constitute the same type of [harm], tending to connect them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence - whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Id.  The degree of permanence consideration is the most important of the factors.  Id. (citing Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1983).

15

V.  CONCLUSION

Therefore, for the reasons set forth above, plaintiff's ADA and RHA claims (Counts VI and VII) as asserted in his Complaint will be dismissed without prejudice as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  However, plaintiff's remaining claims will be allowed to proceed at this time.  An appropriate order follows.


                                         s/ Anne E. Thompson
                                        ANNE E. THOMPSON
                                        United States District Judge

Dated: 5/11/09

16