UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON


JOSE RAMOS,                    :      HON. ANNE E. THOMPSON, U.S.D.J.

         Plaintiff,           :      Civil Action No. 08-2585(AET)

     v.                        :

JON CORZINE, et al.,           :

         Defendants.          :

---------------------------------------------------------------

MATT GREEN,                    :

         Plaintiff,           :      Civil Action No. 09-1600 (AET)

     v.                        :

JON CORZINE, et al.,           :

         Defendants.          :


_____

BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,
PURSUANT TO FED. R. CIV. P. 12(B)(6), AND FOR
SUMMARY JUDGMENT, PURSUANT TO FED. R. CIV. P. 56
_____

                         ANNE MILGRAM
                         Attorney General of New Jersey
                         R.J. Hughes Justice Complex
                         PO Box 112
                         Trenton, New Jersey 08625
                         Attorney for Defendants Bell,
                         Corzine, Farrell, Hayman, Hinman,
                         Paterson, Ricci, Ronoghan, Sherrer,
                         Woodward and the University of
                         Medicine and Dentistry of New Jersey

Susan M. Scott
Deputy Attorney General
  On the Brief

**TABLE OF CONTENTS**

Page

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . 5

    A.   Jose Ramos. . . . . . . . . . . . . . . . . . . . 6

    B.   Matt Green. . . . . . . . . . . . . . . . . . . . 12

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . 19

    A.   The Rule 12(b)(6) Standard. . . . . . . . . . . . 19

    B.   The Summary Judgment Standard.. . . . . . . . . . 20

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    POINT I

        DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT
        TO PLAINTIFFS' MEDICAL NEEDS. . . . . . . . . . . 22

        A.   Jose Ramos.. . . . . . . . . . . . . . . . . 23

        B.   Matt Green.. . . . . . . . . . . . . . . . . 26

    POINT II

        PLAINTIFFS' CLAIMS AGAINST DEFENDANTS BELL,
        CORZINE, FARRELL, HAYMAN, HINMAN, PATERSON,
        RICCI, RONOGHAN, SHERRER, AND WOODWARD ARE
        BARRED AS A MATTER OF LAW BECAUSE A 42 U.S.C.
        § 1983 CLAIM CANNOT BE PREMISED UPON A THEORY
        OF RESPONDEAT SUPERIOR. . . . . . . . . . . . . . 28

    POINT III

        PLAINTIFFS' CLAIMS AGAINST THE UNIVERSITY OF
        MEDICINE AND DENTISTRY OF NEW JERSEY AND THE
        OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS
        BELL, CORZINE, FARRELL, HAYMAN, HINMAN,
        PATERSON, RICCI, RONOGHAN, SHERRER, AND
        WOODWARD ARE BARRED BY THE ELEVENTH AMENDMENT
        AND BECAUSE THESE DEFENDANTS ARE NOT "PERSONS"
        AMENABLE TO SUIT UNDER 42 U.S.C. § 1983. . . . . . 31

i

A.   Plaintiffs' Claims Against the
     University of Medicine and Dentistry
     of New Jersey and Defendants Bell,
     Corzine, Farrell, Hayman, Hinman,
     Paterson, Ricci, Ronoghan, Sherrer,
     and Woodward, in Their Official
     Capacities, Are Barred by the
     Eleventh Amendment and Therefore
     must Be Dismissed. . . . . . . . . . . . . . . 32

B.   The University of Medicine and
     Dentistry of New Jersey and
     Defendants Bell, Corzine, Farrell,
     Hayman, Hinman, Paterson, Ricci,
     Ronoghan, Sherrer, and Woodward, in
     Their Official Capacities, Are Not
     "Persons" Amenable to Suit under 42
     U.S.C. § 1983 and Therefore must Be
     Dismissed from the Complaint. . . . . . . . . 34

POINT IV

     PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES MUST
     BE DISMISSED BECAUSE THE COMPLAINT FAILS TO
     ALLEGE ANY FACTS THAT WOULD SUPPORT A FINDING
     THAT DEFENDANTS ACTED WITH "EVIL MOTIVE" OR
     "CALLOUS INDIFFERENCE" TO A FEDERALLY
     PROTECTED RIGHT. . . . . . . . . . . . . . . . 36

CONCLUSION. . . . . . . . . . . . . . . . . . . . . 37

## <u>TABLE OF AUTHORITIES</u>

Page

CASES

<u>Alabama v. Pugh</u>, 438 <u>U.S.</u> 781 (1978). . . . . . . . . . . .   32

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 <u>U.S.</u> 242 (1986). . . . .   20

<u>Ashcroft v. Iqbal</u>, 129 <u>S. Ct.</u> 1937 (2009).. . . . . . . . 19, 20

<u>Baker v. Monroe Twp.</u>, 50 <u>F.</u>3d 1186 (3d Cir. 1995).. . . . . .   29

<u>Bell Atl. Corp. v. Twombly</u>, 550 <u>U.S.</u> 544 (2007).. . . . . . .   19

<u>Brady v. Michelin Reifenwerke</u>, 613 <u>F. Supp.</u> 1076
(D. Miss. 1985).. . . . . . . . . . . . . . . . . . . . . . .   33

<u>Brooks v. Kyler</u>, 204 <u>F.</u>3d 102 (3d Cir. 2000). . . . . . . . .   20

<u>Celotex Corp. v. Catrett</u>, 477 <u>U.S.</u> 317 (1986).. . . . . . 20, 21

<u>College Savings Bank v. United States of America</u>,
948 <u>F. Supp.</u> 400 (D.N.J. 1996). . . . . . . . . . . . . . . .   33

<u>Durmer v. O'Caroll</u>, 991 <u>F.</u>2d 64 (3d Cir. 1993). . . . . . 22, 23

<u>Gittlemacker v. Prasse</u>, 428 <u>F.</u>2d 1 (3d Cir. 1970).. . . . 29, 30

<u>Jimenez v. New Jersey</u>, 245 <u>F. Supp.</u> 2d 584
(D.N.J. 2003).. . . . . . . . . . . . . . . . . . . . . . . .   28

<u>Keenan v. City of Philadelphia</u>, 983 <u>F.</u>2d 459
(3rd Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . .   36

<u>Kentucky v. Graham</u>, 473 <u>U.S.</u> 159 (1985).. . . . . . . . . . .   33

<u>Matsushita Electric Industrial Co. v.</u>
<u>Zenith Radio Corp.</u>, 475 <u>U.S.</u> 574 (1986).. . . . . . . . . . .   21

<u>McClary v. O'Hare</u>, 786 <u>F.</u>2d 83. . . . . . . . . . . . . . . .   33

<u>Miller v. Rutgers</u>, 619 <u>F. Supp.</u> 1386 (D.N.J. 1985).. . . . . .   33

<u>Pennhurst State School and Hosp. v. Halderman</u>,
465 <u>U.S.</u> 89 (1984). . . . . . . . . . . . . . . . . . . . 32, 33

<u>Quern v. Jordan</u>, 440 <u>U.S.</u> 332 (1979). . . . . . . . . . . . .   32

iii

Rasmussen v. Larson, 863 F.2d 603 (8th Cir. 1988).. . . . . . 29-31
Robinson v. City of Pittsburgh, 120 F.3d 1286
(3d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . 29

Rode v. Dellarciprete, 845 F.2d 1195(3d Cir. 1988). . . . . . 29

Savarese v. Agriss, 883 F.2d 1194 (3rd Cir. 1989).. . . . . . 36

Scott v. Harris, 127 S. Ct. 1769 (2007).. . . . . . . . . . . 21

Smith v. Wade, 461 U.S. 30 (1983).. . . . . . . . . . . . . . 36

Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). . . . . . . . 23

Todaro v. Bowman, 872 F.2d 43 (3d Cir. 1989). . . . . . . . . 20

Will v. Michigan Dept. of State Police,
491 U.S. 58 (1989). . . . . . . . . . . . . . . . . . . 34, 35

STATUTES

29 U.S.C. § 794(a) (2000).. . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 12132 (2000). . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 1983. . . . . . . . . . . . 1, 3, 28, 29, 31, 34, 35

### PRELIMINARY STATEMENT

Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, Woodward and the University of Medicine and Dentistry of New Jersey are entitled to dismissal of Plaintiffs' Complaint and summary judgment because Plaintiffs' Complaint is procedurally barred and wholly without merit. Defendants were not deliberately indifferent to Plaintiffs' medical needs in violation of the Eighth Amendment of the United States Constitution where the Plaintiffs received continuous access to medical treatment for their medical needs. Additionally, Plaintiffs' claims against these Defendants are barred by the Eleventh Amendment and Defendants are not persons amenable to suit under 42 U.S.C. § 1983. Further, Plaintiffs' claims against these Defendants are based upon an impermissible theory of respondeat superior. Finally, Plaintiffs' have not made the requisite showing to support a claim for punitive damages.

### PROCEDURAL HISTORY

Plaintiffs Jose Ramos, #281000/SBI #590522B, Matt Green, #315128/SBI #TMP1000275, and two other inmates, Sean Washington and Maurice Taylor, filed a class action Complaint, docketed Jose Ramos v. Jon Corzine, et al., Civil Action No. 08-2585(AET), as self-designated representatives of a putative class consisting of themselves and others whom Plaintiffs defined as "all those similarly situated." See PACER Civil Action No. 08-2585, Docket Entry No. 1 at 1-2, 16 (clarifying that "[h]undreds if not

thousands of prisoners with orthopedic and prosthetic conditions are committed to the custody of [New Jersey Department of Corrections] every year").

On June 24, 2008, the Court denied class certification and terminated the claims of Plaintiff Green, Sean Washington and Maurice Taylor. See PACER Civil Action No. 08-2585, Docket Entry No. 2 at ¶ 12, ¶ 14. The Court also dismissed Ramos's claims for breach of contract and his claims under the American with Disabilities Act, 42 U.S.C. § 12132 (2000)("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (2000)("RHA"). Id. at ¶¶ 17, 19. Moreover, due to the statute of limitations, the Court dismissed all of Ramos's allegations arising prior to May 16, 2006 as time barred. Id. at ¶ 18. Thus, narrowing Ramos's claims to the only three events he alleged occurred after May 16, 2006: (1) the alleged denial of his orthopedic sneakers on June 5, 2006, in response to his March 13, 2006, request; (2) the alleged denial of his subsequent request for orthopedic sneakers on August 1, 2006, citing his deteriorating health condition; and, (3) the alleged lack of medical treatment of his back pain on September 1, 2006. Id.

On October 27, 2008, Defendants Jeffrey Bell, Jon Corzine, Thomas Farrell, George Hayman, Vaughn Hinman, Robert Patterson, Michelle Ricci, Peter Ronaghan, Lydell Sherrer and Ralph Woodward, filed an Answer to Plaintiff Ramos's Complaint. See Civil Action

No. 08-2585(AET), Docket Entry No. 32.  On October 6, 2009, an Answer was filed on behalf of Defendant University of Medicine and Dentistry.  See Civil Action No. 08-2585(AET), Docket Entry No. 67.

On April 6, 2009, the Court permitted Plaintiff Green's claims to be filed as an individual complaint separate from that of the Ramos matter.  See Pacer 09-01600, Docket Entry No. 1-3. Therefore, the Clerk opened the matter of Matt Green v. Jon Corzine, et al., Civil Action No. 09-1600 (AET).[1]

On May 11, 2009, the Court issued an Order and Opinion dismissing without prejudice Plaintiff Green's claims under the ADA and the RHA.[2]  See Pacer 09-01600, Docket Entry No. 5.  However, the Court permitted Plaintiff Green's remaining claims under 42 U.S.C. § 1983, asserting Eighth Amendment violations with respect to a denial of medical care, and his state law claims, to the extent that they are related to his Eighth Amendment claim, to proceed.  Id.

On May 18, 2009, the Court issued an Order in the Ramos, Green and Washington matters, denying without prejudice the Correctional Medical Services, Inc. ("CMS") Defendants' motions for summary judgement in lieu of an answer.  See Civil Action No. 09-01600, Docket Entry No. 8.  In doing so, the Court stated that it would be

---

[1]The Court also permitted Sean Washington's claims be filed as a separate matter, and his Complaint was docketed as Sean Washington v. Jon Corzine, et al., Civil Action No. 09-1601 (AET).

[2]Counts VI and VII of the Complaint.

more efficient for the parties to brief, and for the Court to consider, dispositive motions with respect to the claims of all three Plaintiffs, Ramos, Washington and Green, at the same time. Id.  Therefore, the Court ordered that the CMS Defendants may refile one dispositive motion addressing all the claims of all three Plaintiffs Ramos, Washington and Green.  Id.

In the Green matter, service of process was effected as follows: Defendants Michelle Ricci, Peter Ronoghan and Vaughn Hinman were served on June 12, 2009; Defendants George Hayman, Lydell Sherrer, Robert Paterson, Thomas Farrell and Jeffrey Bell were served on June 17, 2009; Defendant University of Medicine and Dentistry of New Jersey was served on July 13, 2009; Defendant Jon Corzine was served on July 24, 2009; and, Defendant Ralph Woodward was served on July 27, 2009.

The State Defendants also intended to file motions for summary judgment in the Ramos, Green, and Washington matters.  However, because the State Defendants had not been served in the Washington matter, and the Court's May 18, 2009 Order required that any motions for summary judgment in these matters be filed as one motion addressing the claims of all three plaintiffs, the State Defendants sought an extension of time to answer Plaintiff Green's Complaint thirty days from the date of the last Department of Corrections defendant is served with the Summons and Complaint in the Washington matter.  See 09-01600, Docket Entry No. 28.  The

4

Court granted that motion on September 21, 2009.  See 09-01600, Docket Entry No. 38.

On October 6, 2009, the Court received a letter from Mr. Washington stating that he wished to withdraw his Complaint.  See 09-01601, Docket Entry No. 13.  Therefore, the Court entered an order dismissing Mr. Washington's Complaint.  Id.  Because no service would be made upon the State Defendants in the Washington matter, the State Defendants requested and were granted an extension to November 19, 2009 to file an answer, move or otherwise reply to Plaintiff Green's Complaint.  See 09-01600, Docket Entry Nos. 56.

This motion to dismiss and for summary judgment in the Green and Ramos matters on behalf of the State Defendants in the follows.

## STATEMENT OF FACTS

Defendant Jon Corzine is the Governor of the State of New Jersey.  See Plaintiff's respective Complaints at ¶ 14.

Defendant George Hayman is the Commissioner of the New Jersey Department of Corrections.  Id. at ¶ 15.

Defendant Lydell Sherrer was the Acting Assistant Commissioner of the New Jersey Department of Corrections.  Id. at ¶ 16.

Defendant Robert Patterson is the Director of the Division of Operations at the New Jersey Department of Corrections.  Id. at ¶ 17.

Defendant Thomas Farrell is the Assistant Director of the Division of Operations at the New Jersey Department of Corrections. Id. at ¶ 18.

Defendant Ralph Woodward is Director of Medical Services at the New Jersey Department of Corrections.   Id. at ¶ 19.

Defendant Michelle Ricci is the Administrator of New Jersey State Prison.   Id. at ¶ 20.

Defendant Jeffrey Bell was an Assistant Superintendent at New Jersey State Prison.   Id. at ¶ 21.

Defendant Peter Ronoghan is the business manager at the New Jersey State Prison.   Id. at ¶ 22.

Defendant Vaughn Hinman is the Storekeeper at New Jersey State Prison.   Id. at ¶ 23.

**A.    Jose Ramos**

Plaintiff Ramos's Complaint states that prior to his incarceration, Plaintiff Ramos was in a severe car accident in which his legs and feet were crushed and he had been trying to rehabilitate his lower limbs through a daily regimen of exercises and therapy since the time of the accident that caused the injuries.   See 08-02585, Docket Entry No. 1 at ¶¶ 76-77.  Plaintiff Ramos alleges that, following his incarceration, he experienced "repeated delays in obtaining orthopedic braces, shoes, lifts and insoles" and was denied therapy.   See id. at ¶ 78.  Specifically, he alleges that on August 1, 2006, his request for orthopedic

footwear was denied, and he was therefore unable to keep his exercise regimen and experienced "muscle weakness, stiffness, swelling, and constant pain" in his foot and ankle. See id. at ¶ 89. Then on September 1, 2006, he obtained an emergency medical pass to get medical treatment for back pain. See id. at ¶ 90. Plaintiff Ramos alleges that in the following weeks, he was examined by medical doctors who, allegedly denied him any treatment and refused issuance of orthopedic footwear citing budget cuts. See id. On October 21, 2006, Plaintiff Ramos filed an administrative remedy form alleging that he was not being treated for his back pain. See id. at ¶ 91.

Despite Plaintiff Ramos's bald allegations to the contrary, his request for orthopedic footwear was not denied. See Hutton Decl. for Ramos matter, Ex. B at RAMOS 009. On May 1, 2006, Dr. Grace Melendez ordered a prosthetics consult for Plaintiff Ramos, but that the consult had not been conducted by August 1, 2006, when Plaintiff file a Request System and Remedy Form requesting orthopedic footwear. See Hutton Decl., for the Ramos matter, Ex. B at RAMOS 009; Ex. D at 026. Accordingly, the consult was reordered. Id.; see also Hutton Decl., for the Ramos matter, Ex. D at RAMOS 030.

Thereafter, Plaintiff Ramos was seen on September 5, 2006, in the Cocco Clinic to be fit for new orthopedic boots, right ½" inside lift and foot orthotics. See Scott Decl., for the Ramos

matter, Ex. A at COCCO 001; see also Hutton Decl., for the Ramos matter, Ex. C at RAMOS 034.   The Cocco Clinic submitted an authorization request for Plaintiff's Ramos's new orthopedic boots, right ½ inch shoe lift and foot orthotics to Correctional Medical Services, Inc.[3]   See Scott Decl., for the Ramos matter, Ex. A at COCCO 002.   On September 25, 2006, the Cocco Clinic internally ordered the right ½ inch shoe lift.   Id. at COCCO 003.   On November 14, 2006, Plaintiff Ramos received his orthopedic boots, shoe lift and orthotics.   Id. at COCCO 004; Hutton Decl., for the Ramos matter, Ex. D at RAMOS 039.

Moreover, Plaintiff Ramos was not denied medical treatment for his feet, legs or back.   See Hutton Decl., for the Ramos matter, Exs. B, C, D.   According to Plaintiff Ramos's medical records, an order for a prosthetics consult was issued on May 1, 2006.   Id. at Ex. D at RAMOS 026.

On July 12, 2006, Plaintiff Ramos was seen by Registered Nurse Juluander Berry for complaints of low back pain going down his legs for three weeks.   Id. at RAMOS 028-029.   Nurse Juluander referred him to a doctor for evaluation.   Id.   Thereafter, on August 4, 2006, Dr. Allan Martin examined Plaintiff Ramos and ordered a prosthetics consult.   Id. at RAMOS 031-032, 033.

---

[3]At all times relevant to the Complaint, Correctional Medical Services, Inc. was the contracted health care provider for the inmates in the New Jersey Department of Corrections.

8

On August 27, 2006, Plaintiff Ramos requested renewal of his prescription for an ankle brace.  Hutton Decl., for the <u>Ramos</u> matter, Ex. C.  That issue was noted as resolved on September 6, 2006.  <u>Id.</u>

On September 1, 2006, Dr. Martin again saw Plaintiff Ramos for complaints of law back pain.  <u>Id.</u> at RAMOS 031-032.  This time, Plaintiff Ramos said he had been suffering from low back pain since he coughed about two to three months prior.  <u>Id.</u>  Dr. Martin ordered an x-ray of Plaintiff Ramos's lumosacral spine, which was conducted on September 13, 2006 and revealed a degenerative mild narrowing of the L5-S1.  <u>Id.</u> at RAMOS 033; 037.

On October 10, 2006, Plaintiff Ramos sought medical treatment for his complaints of stomach, ankle, leg and back pain.  Hutton Decl., for the <u>Ramos</u> matter, Ex. C at RAMOS 021.  On October 16, 2006, Plaintiff saw Dr. Martin and requested an ankle brace.  <u>Id.,</u> Ex. D at RAMOS 038.  Dr. Martin noted that Plaintiff Ramos was to be reassessed for an ankle brace.  <u>Id.</u>  Plaintiff did not complain of any pain during this visit with Dr. Martin.  <u>Id.</u>

On August 30, 2007, Plaintiff Ramos requested a renewal of his prescription for an ankle brace.  Hutton Decl., for the <u>Ramos</u> matter, Ex. C at RAMOS 022.  On September 7, 2007, he submitted a second request for the renewal of his ankle brace prescription. <u>Id.</u> at RAMOS 023.  On September 9, 2007, Dr. Martin ordered that Plaintiff Ramos's prescription for an ankle brace be renewed for

one-year.  Id., Ex. D at RAMOS 041.  The ankle brace was ordered and, on September 12, 2007, the brace was sent to Plaintiff Ramos. Id., Ex. C at RAMOS 023; Ex. D at RAMOS 042.

On November 15, 2007, Plaintiff Ramos sought medical treatment for pain in his legs and feet.  Id., Ex. C at RAMOS 024.  On November 19, 2007, Registered Nurse Barbara Brown attempted to evaluate Plaintiff Ramos but he was unavailable.  Id., Ex. D at RAMOS 043.  On November 21, 2007, Nurse Brown noted that Plaintiff had foot pain and had a brace on his ankle, insoles in his sneakers and that his sneakers were last issued in November 2006.  Id., Ex. D at RAMOS 044.  Nurse Brown also indicated that Plaintiff Ramos would be seen by a doctor within seven days.  Id.

On November 26, 2007, Plaintiff Ramos was evaluated by Dr. Ihuoma Nwachukwu for his complaints of pain in his feet.  Id., Ex. D at RAMOS 045-046.  Plaintiff Ramos complained of a painful corn his fifth toe and that his sneakers were old.  Id.  Plaintiff Ramos requested to be seen by the foot clinic.  Id.

On December 11, 2007, Plaintiff Ramos requested to see a doctor for pain in his foot.  Id., Ex. C at RAMOS 024.  On December 13, 2007, Plaintiff Ramos was in the law library and, therefore, unavailable for evaluation.  Id.

On December 17, 2007, Plaintiff Ramos was seen in the podiatry clinic.  Id., Ex. D at RAMOS 047-048.  He complained of a painful corn on his left fifth toe, but refused any treatment for the corn.

10

Id. at RAMOS 048.  Plaintiff Ramos stated that he was there for a reevaluation for new boots.  Id.  He stated that his boots were not comfortable and he wanted exercise shoes.  Id.  The doctor found no areas of pain to the touch and recommended that Plaintiff Ramos be fitted for a boot with a reinforced shank and extended counters to accommodate his drop foot brace.  Id.

On January 5, 2008, Certified Registered Nurse Susan Spingler examined Plaintiff Ramos due to his complaints of foot pain.  Id. at RAMOS 049-050.  Nurse Spingler noted that he was ambulating without difficulty and refused any pain medication.  Id.  On this date, Dr. Martin ordered an elevator pass for Plaintiff Ramos due to his history of a left foot drop.  Id. at RAMOS 051.

On January 10, 2008, Dr. Nwachuwu noted that Plaintiff Ramos was to receive a prosthetic consult.  Id. at RAMOS 052.  On January 25, 2008, Plaintiff Ramos's prosthetic consult was approved.  Id. at RAMOS 053.

On February 26, 2008, the Cocco Clinic saw Plaintiff Ramos for new orthopedic boots and a right ½ inch shoe lift.  Scott Decl., for the Ramos matter, Ex. A at COCCO 006.  On March 5, 2008, Correctional Medical Services, Inc. approved the authorization request submitted by the Cocco Clinic to order new orthopedic boots and a ½ inch shoe lift for Plaintiff's Ramos.  Id. at COCCO 007. On March 20, 2008, the Cocco Clinic internally ordered the boots and the shoe lift for Plaintiff Ramos.  Id. at COCCO 008.  On March

11

25, 2008, Plaintiff Ramos was scheduled to pick up his boots and shoe lift on April 1, 2008.  Id. at COCCO 009; Hutton Decl., for the Ramos matter, Ex. D at RAMOS 054.  However, that appointment was rescheduled to April 15, 2008.  Id. at COCCO 009; Hutton Decl., for the Ramos matter, Ex. D at RAMOS 055.  On April 15, 2008, Plaintiff Ramos received his orthopedic boots and shoe lift.  Id. at COCCO 010; Hutton Decl., for the Ramos matter, Ex. D at RAMOS 056, 057.  Plaintiff Ramos stated that the fit and function of the his boots were fine.  Hutton Decl., for the Ramos matter, Ex. D at RAMOS 057.  Plaintiff Ramos was to follow up as needed.  Id.

On May 20, 2008, Registered Nurse Lavonia James evaluated Plaintiff Ramos for his complaints of a corn on his toe.  Id. at RAMOS 058-059.  Nurse James referred him to be seen by a doctor within seven days.  Id.

Plaintiff Ramos's medical records and Health Services Request Forms reveal that following his spine x-ray in September of 2006, he no longer complained of any back pain.  See Hutton Decl., for the RAMOS matter, Exs. C, D.

**B.  Matt Green**

Plaintiff Green alleges he has extra-wide feet and is comfortable only when he wears extra-wide size 10EEE orthopedic shoes.  See 09-01600, Docket Entry No. 1 at ¶ 58.  He alleges that upon his incarceration in the state of New Jersey, he was issued footwear size 10 rather than 10EEE, which complicated his daily

12

activities and resulted in blisters on his feet.  See id. at ¶¶ 59, 60.

In 1999, he received a medical prescription for and was provided with size 10EEE boots and sneakers.  See id. at ¶ 61. However, he alleges that on August 15, 2006, during a search of New Jersey State Prison, his prescription footwear was stolen, and he was again supplied with footwear size 10 rather than 10EEE, which caused reappearance of blisters.  See id. at ¶¶ 65, 66.  Following a number of doctor visits for treatment of the blisters, Plaintiff Green was issued boots size 11, which have "accommodate[d] the width of his feet [but have been too big in length and] produced a new set of bleeding ulcers."  Id. at ¶¶ 68-73.  Plaintiff Green alleges that the lack of 10EEE footwear and the need to wear footwear size 11 causes him "pain, physical injury, and emotional suffering."  Id. at ¶ 75.

However, a review of Plaintiff Green's Request System and Remedy Forms, Health Services Request Forms and medical records reveal that the Defendants were not deliberately indifferent to Plaintiff's need for extra wide footwear.  See Hutton Decl., for the Green matter, Exs. B, C, D.

On August 27, 2006, Plaintiff sought medical care for open blisters on his feet.  Id., Ex. C at GREEN 47.  The next day, August 28, 2006, Registered Nurse Kathleen Skinner examined Plaintiff Green for the blisters on his feet.  Id., Ex. D at GREEN

13

185-187.  Nurse Skinner advised tan officer that Plaintiff Green needed wide boots size 10 EEE, or as wide as possible.  <u>Id.</u>  Nurse Skinner also issued Plaintiff Green a medical lay-in excusing him from work and recreation for seven days.  <u>Id.</u>

On August 30, 2006, Plaintiff Green submitted two requests for size 10 extra wide footwear.  Hutton Decl., for the <u>Green</u> matter, Ex. B at GREEN 11, 12.  He stated that on August 22, 2006, he was temporarily issued size 10 ½ boots until size 10 extra wide footwear was issued to him.  <u>Id.</u>

On September 14, 2006, Plaintiff Green was advised that the storekeeper was in the process of ordering his requested size 10 extra wide boots and sneakers.  <u>Id.</u> at GREEN 11.

On September 28, 2006, Plaintiff Green requested size 10 EEE medical boots and sneakers.  <u>Id.</u> at GREEN 13.  Plaintiff Green was advised that the medical department provides sneakers or boots in the cases where the inmate suffers from a deformity or needs prosthetics.  <u>Id.</u>  However, the provision of shoes and boots to inmates without deformities or the need for prosthetics is the responsibility of the New Jersey Department of Corrections.  <u>Id.</u>

Plaintiff Green did not file another request regarding ill-fitting footwear for eight months.  <u>See</u> Hutton Decl., for the <u>Green</u> matter, Ex. B.  On April 29, 2007, Plaintiff Green requested a pair of size 10 EEE boots.  Hutton Decl., for the <u>Green</u> matter, Ex. B at GREEN 15.  He received size 10 XW boots on May 14, 2007.  <u>Id.</u>  The

14

Xwide width boots supplied to New Jersey State Prison are equivalent to EEE. Scott Decl., Ex. A. Therefore, the size 10XW boots issued to Plaintiff Green were equivalent to size 10 EEE. Id.

On June 5, 2007, Plaintiff Green filed a Request System and Remedy Form stating that he was issued size 10 XW boots, rather than size 10 EEE boots, and that those boots were too tight and caused blisters on his feet. Hutton Decl., for the Green matter, Ex. B at GREEN 16. Defendant Hinman explained that size 10 XW was equal to size 10 EEE. Id.

On August 14, 2007, Plaintiff Green sought medical treatment for blisters on his feet. Id., Ex. C at GREEN 48. It was almost one year since Plaintiff Green last complained of blisters on his feet. See id., Ex. C. On August 17, 2007, Registered Nurse Barbara Brown noted that Plaintiff Green's boots gave him blisters and that he needed to be given "extra wide" boots and seen by the podiatrist. Id. Nurse Brown also indicated that she gave him two bandaids. Id.

On August 17, 2007, Plaintiff Green filed a Request System and Remedy Form stating the he was suffering from open wounds on his feet due to his ill-fitting footwear. Hutton Decl., for the Green matter, Ex. B at GREEN 17-25. A review of his medical chart revealed that his last complaint to the medical department regarding his feet was on August 28, 2006 and that his at his

15

previous visit to the medical department on July 11, 07, he did not raise any complaints with regard to his feet. Id., Ex. B at GREEN 17; see also Ex. D.

On August 24, 2007, Plaintiff Green submitted a Request System and Remedy Form stating that although he turned in his wide width sneakers for exchange on August 15, 2007, he had no yet been provided with new wide width sneakers. Hutton Decl., for the Green matter, Ex. B at GREEN 26. Defendant Hinman advised Plaintiff Green that sneakers were no longer being replaced. Id.

On August 22, 23 and 24, 2007, Plaintiff Green submitted additional requests to be seen by the medical department regarding open blisters on his feet. Id. at GREEN 49-51.

On August 26, 2007, Nurse Brown examined Plaintiff Green and noted that he complained of open wounds on his feet caused by blisters. Id., Ex. C at GREEN 51; Ex. D at GREEN 97-98. However, upon inspection, Nurse Brown saw that he had no open wounds, all the blisters on the bottoms of his feet were healed and that the blisters on the top of his right foot and both ankles were healing and not open. Id., Ex. D at GREEN 97-98. Nurse Brown also noted that he complained that his shoes were too tight and he was requesting a medical lay-in. Id. Nurse Brown gave Plaintiff Green three large bandaids for his blisters. Id.

On August 28, 2007, Dr. Allan Martin evaluated the blisters on Plaintiff Green's feet. Id. at GREEN 96.

On September 21, 2007, Dr. Martin ordered that Plaintiff Green be seen by the foot care clinic for a consult regarding his reoccurring blisters. Id. at GREEN 94, 93.

On September 27, 2007, Plaintiff Green sought medical treatment for an open blister on his right foot. Id., Ex. C at GREEN 52. Plaintiff Green was referred to the doctor for boots that fit him. He was also referred to the foot clinic for evaluation. Id.

On October 10, 2007, Plaintiff Green filed a Request System and Remedy Form stating that he was suffering from bleeding blisters on his feet and asking for replacement boots. Id. at GREEN 27. He was advised that the medical department does not issue wide shoes and that he would have to request them from the New Jersey Department of Corrections. Id. He was also scheduled to be seen by a podiatrist for further treatment. Id.

On October 12, 2007, Advanced Practice Nurse Harriet R. Berliner evaluated Plaintiff Green in the foot care clinic. Id., Ex. D at GREEN 90-91. Nurse Berliner noted that his boots were too small and have created blisters on his feet. Id. at GREEN 90. Therefore, she recommended a prosthetics consult for properly fitting boots and that the open blisters be treated for three days until healed. Id.

On October 15, 2007, Plaintiff Green sought medical treatment for an open blister on his left foot. Id., Ex. C at GREEN 53.

Nurse Skinner noted that he had been evaluated on October 12, 2007, and that he was to be scheduled for prosthetics consult and that treatment was to be provided for his open blisters. Id. at GREEN 54.

On October 22, 2007, Advanced Practice Nurse Donique Ivery ordered a podiatry consult for Plaintiff Green for October 29, 2007. Id., Ex. D at GREEN 87-88, 81-82. Unfortunately, Plaintiff Green was not put on the list so he was not seen for a podiatry consult on that date. Id. at GREEN 81. Therefore, he was rescheduled for the next podiatry clinic. Id.

On November 19, 2007, Plaintiff Green was seen by Nurse Ivery in the podiatry clinic, who noted that all open areas on Plaintiff Green's feet were resolved. Id. at GREEN 76. Nurse Ivery recommended that Plaintiff Green be fitted for size 10 EEE boots to resolve his problems with blisters. Id.

On March 21, 2008, he submitted a Request System and Remedy Form stating that he received size 11 boots, which were two sizes too big and still too tight in the width, and requesting size 10 EEE boots. Id., Ex. B at GREEN 28. On May 2, 2008, Plaintiff Green was advised that the requested boots were ordered. Id.

On June 13, 2008, Dr. Abu Ashan saw Plaintiff Green for his complaints of chronic pain. Id., Ex. D at GREEN 65. Plaintiff Green told Dr. Ashan that he normally wore size 10 EEE shoes, but that he did not have any in that size at that time. Id. Dr. Ashan

advised Plaintiff Green to request that the New Jersey Department of Corrections measure him for boots.  Id.

Plaintiff Green had not complained of or sought treatment for blisters on his feet from June 13, 2008 through May 2009.  See Hutton Decl., for the Green matter, Exs. C; D at GREEN 55-64.

## STANDARD OF REVIEW

### A.   The Rule 12(b)(6) Standard

There are two working principles underlying the motion to dismiss standard.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) Instead, legal conclusions "must be supported by factual allegations" in order to be "entitled to the assumption of truth." Id. at 1950.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.  A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  This standard is not a probability

19

requirement, but it "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949.

In other words, a complaint that pleads facts "merely consistent with a defendant's liability" raises the possibility that the defendant is liable for the alleged misconduct, but "stops short of the line" of plausibility required for entitlement to relief. Id. When the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." Id. (citing Fed. R. Civ. P. 8(a)(2)) (quotations omitted)(brackets omitted).

**B.   The Summary Judgment Standard**

Summary judgment may be granted if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3d Cir. 2000); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Todaro v. Bowman, 872 F.2d 43, 46 (3d Cir. 1989). An issue is "genuine" only if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is "material" only if it influences the outcome under the applicable law. Id. at 248.

The moving party bears the initial burden of demonstrating either (1) that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or (2) that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. <u>Celotex Corp. v. Catrett</u>, <u>supra</u>, 477 <u>U.S.</u> at 331. Once either showing is made, the burden shifts to the non-moving party, who must demonstrate facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact. <u>Id.</u> To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading." <u>Fed. R. Civ. P.</u> 56(e). Rather, he must produce sufficient evidence to support a jury verdict in his favor and not just create some metaphysical doubt as to material facts. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 <u>U.S.</u> 574 (1986).

In <u>Scott v. Harris</u>, 127 <u>S. Ct.</u> 1769 (2007), the Supreme Court held that although courts deciding summary judgment motions generally must view disputed facts in favor of the non-moving party, this rule does not apply when the opposing party's version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it." <u>Id.</u> at 1776. When presented with such evidence, a court should not engage in the "fiction" of viewing the facts in the light most favorable to the non-moving party. <u>Id.</u>

**ARGUMENT**

**POINT I**

**DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT
TO PLAINTIFFS' MEDICAL NEEDS.**

Plaintiffs' Complaints that Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, Woodward and the University of Medicine and Dentistry of New Jersey was deliberately indifferent to his medical needs is wholly without merit and should be dismissed.

In _Durmer v. O'Caroll_, 991 _F._2d 64 (3d Cir. 1993), the Court addressed this issue in a medical indifference case.  In the lower court, the _Durmer_ plaintiff had filed a civil rights lawsuit against medical personnel, and two New Jersey Department of Corrections Administrators, specifically William Fauver, then Commissioner of the New Jersey Department of Correction, and Robert Barker, the former Superintendent of Mid-State Correctional Facility.  The basis of the claim against Fauver and Barker was that they failed to respond to plaintiff's complaints regarding his medical treatment.  The District Court Judge granted defendants' motion for summary judgment as to all of the defendants.  On appeal, the Third Circuit reversed the summary judgment order as to the physician and upheld the dismissal as to Fauver and Barker.  In support of this decision, the court noted that

> Neither of these defendants . . . is a physician, and neither can be considered deliberately indifferent simply because they

22

> failed to respond directly to the medical
> complaints of a prisoner who was already
> being treated by the prison physician.

[Id. at 69.]

The United States Court of Appeals for the Third Circuit extended the holding in Durmer from the summary judgment stage to the motion to dismiss stage of a case. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). The Court found:

> If a prisoner is under the care of medical
> experts ... a non-medical prison official will
> generally be justified in believing that the
> prisoner is in capable hands. This follows
> naturally from the division of labor within a
> prison. Inmate health and safety is promoted
> by dividing responsibility for various aspects
> of inmate life among guards, administrators,
> physicians, and so on. Holding a non-medical
> prison official liable in a case where a
> prisoner was under a physician's care would
> strain this division of labor. Moreover,
> under such a regime, non-medical officials
> could even have a perverse incentive not to
> delegate treatment responsibility to the very
> physicians most likely to be able to help
> prisoners, for fear of vicarious liability.

[Id.]

The Spruill Court then found that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official" can not be found liable for deliberate indifference. Id.

### A.   Jose Ramos

In the case at bar, Plaintiff Ramos's remaining claims are that Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson,

Ricci, Ronoghan, Sherrer, Woodward and the University of Medicine and Dentistry of New Jersey were deliberately indifferent to his medical needs because he was allegedly denied: (1) orthopedic footwear on June 5, 2006 and on August 1, 2006; and, (2) medical treatment for his back pain on September 1, 2006. See PACER Civil Action No. 08-2585, Docket Entry No. 2 at ¶ 18.

However, a review of Plaintiff Ramos's medical records and Health Services Request Forms reveal that Plaintiff was not denied orthopedic shoes or medical treatment for his back pain.  See Hutton Decl., for the Ramos matter, Exs. C, D; see also Scott Decl., for the Ramos matter, Ex. A.  On May 1, 2006, Dr. Grace Melendez ordered a prosthetics consult for Plaintiff Ramos, but that the consult had not been conducted.  See Hutton Decl., for the Ramos matter, Ex. B at RAMOS 009; Ex. D at 026.  Accordingly, on August 4, 2006, within three days of Plaintiff Ramos's filing his Request System and Remedy Form, a prosthetics consult was reordered.  Id., Ex. B at RAMOS 009; Ex. D at RAMOS 030.  On September 5, 2006, Plaintiff Ramos was fitted for new orthopedic boots, a right ½" inside lift and foot orthotics, (See Scott Decl., for the Ramos matter, Ex. A at COCCO 001; see also Hutton Decl., for the Ramos matter, Ex. C at RAMOS 034), which he received on November 14, 2006.  Id. at COCCO 004; Hutton Decl., for the Ramos matter, Ex. D at RAMOS 039.

Moreover, on February 26, 2008, Plaintiff Ramos was again
fitted for new orthopedic boots and a right ½ inch shoe lift due to
his complaints that his orthopedic footwear was old. Scott Decl.,
for the Ramos matter, Ex. A at COCCO 006.   Following that
appointment, Plaintiff Ramos received his orthopedic boots and shoe
lift on April 15, 2008.   Id. at COCCO 010; Hutton Decl., for the
Ramos matter, Ex. D at RAMOS 056, 057.   When he received his
orthopedic boots and shoe lift, he stated that the fit and function
of the his boots were fine.   Hutton Decl., for the Ramos matter,
Ex. D at RAMOS 057.   Plaintiff Ramos was to follow up as needed.
Id.

Finally, Plaintiff Ramos was not denied medical treatment for
his feet, legs or back.   See Hutton Decl., for the Ramos matter,
Exs. B, C, D.   According to Plaintiff Ramos's Health Services
Request Forms and medical records, Plaintiff Ramos received medical
treatment for each of his complaints relating to pain in his feet,
legs and back.   Id. at Exs. C, D.   Specifically, on July 12, 2006,
Plaintiff Ramos was seen by Nurse Juluander Berry due to his
complaints of low back pain.   Id. at RAMOS 028-029.   Thereafter, on
August 4, 2006, Dr. Martin examined Plaintiff Ramos and ordered a
prosthetics consult.   Id. at RAMOS 031-032, 033.   On September 1,
2006, Dr. Martin again saw Plaintiff Ramos for complaints of law
back pain.   Id. at RAMOS 031-032.   This time, Plaintiff Ramos said
he had been suffering from low back pain since he coughed about two

to three months prior.  Id.  Dr. Martin ordered an x-ray of Plaintiff Ramos's lumosacral spine, which was conducted on September 13, 2006 and revealed a degenerative mild narrowing of the L5-S1.  Id. at RAMOS 033; 037.  Following his spine x-ray in September of 2006, Plaintiff Ramos no longer complained of any back pain.  See Hutton Decl., for the RAMOS matter, Exs. C, D.

As in Durmer and Spruill, Defendants are not a physicians and, therefore, cannot be considered deliberately indifferent to Plaintiff Ramos's medical needs, particularly since he was under the continuous care of medical professionals.  See Hutton Decl., for the Ramos matter, Exs. C, D.  The record shows that Plaintiff Ramos was not denied access to medical care and Defendants did not show deliberate indifference to his medical needs.  Id.  Therefore, Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, Woodward and the University of Medicine and Dentistry of New Jersey are entitled to summary judgment on Plaintiff Ramos's claim for deliberate indifference.[4]

### B.   Matt Green

Plaintiff Green alleges since August 15, 2006, he has been denied size 10 EEE footwear, which has resulted in his suffering

---

[4]Because the Court permitted Plaintiffs' state law claims to proceed only to the extent that they are related to their Eighth Amendment claims, Defendants are entitled to summary judgment on those claims for the same reasons that they are entitled to summary judgment on Plaintiffs' Eighth Amendment claims.

"pain, physical injury, and emotional suffering."   See 09-01600,
Docket Entry No. 1 at ¶¶ 58-75.

However, a review of Plaintiff Green's Request System and
Remedy Forms, Health Services Request Forms and medical records
reveal that the Defendants were not deliberately indifferent to
Plaintiff Green's need for extra wide footwear.   See Hutton Decl.,
for the Green matter, Exs. B, C, D, E.   Plaintiff Green has been
continually provided with the size shoes he requested and the
consultations ordered by the medical department.   See id., Exs. B,
C, D, E.   Initially, Plaintiff Green requested shoes in size 10
extra wide.   Id., Ex. B at GREEN 11, 12.   Then he requested boots
in size 10 EEE.   Id. at GREEN 13, 15, 16.   Nevertheless, he was
provided with size 10 XW boots, as initially requested, which are
equivalent to EEE.   Id., Ex. B at GREEN 15; see also Scott Decl.,
Ex. A.   Therefore, Plaintiff Green received boots in a size
equivalent to the size he requested.

Additionally, Plaintiff Green has been provided with
continuous access to medical care for all of his medical
complaints.   See id., Ex. D.  Plaintiff Green had not complained of
or sought treatment for blisters on his feet from June 13, 2008
through May 2009.   See Hutton Decl., for the Green matter, Exs. C;
D at GREEN 55-64.

As in Durmer and Spruill, Defendants are not a physicians and,
therefore, cannot be considered deliberately indifferent to

27

Plaintiff Green's medical needs, particularly since he was under the continuous care of medical professionals.  See Hutton Decl., for the Green matter, Exs. B, C, D.   The record shows that Plaintiff Green was not denied access to medical care or extra wide footwear and that Defendants did not show deliberate indifference to his medical needs.   Id.  Therefore, Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, Woodward and the University of Medicine and Dentistry of New Jersey are entitled to summary judgment on Plaintiff Green's claim for deliberate indifference.

## POINT II

**PLAINTIFFS' CLAIMS AGAINST DEFENDANTS BELL, CORZINE, FARRELL, HAYMAN, HINMAN, PATERSON, RICCI, RONOGHAN, SHERRER, AND WOODWARD ARE BARRED AS A MATTER OF LAW BECAUSE A 42 U.S.C. § 1983 CLAIM CANNOT BE PREMISED UPON A THEORY OF RESPONDEAT SUPERIOR.**

Plaintiffs' claim against Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer and Woodward must be dismissed because they did not have any personal involvement in this matter and the claims are based solely on an impermissible theory of respondeat superior.  Supervisory liability under 42 U.S.C. § 1983 cannot be predicated solely upon a theory of respondeat superior.  Jimenez v. New Jersey, 245 F. Supp. 2d 584, 586 n. 3 (D.N.J. 2003) (citing Polk County v. Dodson, 454 U.S. 312, 325 (1981)).

> A defendant in a civil rights action must have
> personal involvement in the alleged wrongs;
> liability cannot be predicated solely on the
> operation of respondeat superior. Personal
> involvement can be shown through allegations
> of personal direction or of actual knowledge
> and acquiescence. Allegations of participation
> or actual knowledge and acquiescence, however,
> must be made with appropriate particularity.
>
> [Rode v. Dellarciprete, 845 F.2d 1195, 1207
> (3d Cir. 1988) (citations omitted).]

"Actual knowledge and acquiescence" suffice for supervisory liability because together they "can be equated with 'personal direction.'" Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997)(citation omitted). Furthermore, while knowledge can be inferred from circumstances, Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995), it nevertheless must be actual knowledge, id. at 1201 n. 6 (Alito, C.J. concurring and dissenting).

Here, Plaintiffs "must portray specific conduct by state officials which violates some constitutional right" in order to state a claim for relief. Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970); see also Rasmussen v. Larson, 863 F.2d 603 (8th Cir. 1988)(holding 42 U.S.C. § 1983 liability would not be held against supervisory officers absent a showing of personal and direct involvement in the alleged constitutional violation). Plaintiffs have not made that showing here.

Defendant Jon Corzine is the Governor of the State of New Jersey. See Plaintiff's respective Complaints at ¶ 14. Defendant George Hayman is the Commissioner of the New Jersey Department of

Corrections.  Id. at ¶ 15.  Defendant Lydell Sherrer was the Acting Assistant Commissioner of the New Jersey Department of Corrections. Id. at ¶ 16.  Defendant Robert Patterson is the Director of the Division of Operations at the New Jersey Department of Corrections. Id. at ¶ 17.  Defendant Thomas Farrell is the Assistant Director of the Division of Operations at the New Jersey Department of Corrections.  Id. at ¶ 18.  Defendant Ralph Woodward is Director of Medical Services at the New Jersey Department of Corrections.  Id. at ¶ 19.  Defendant Michelle Ricci is the Administrator of New Jersey State Prison.  Id. at ¶ 20.  Defendant Jeffrey Bell was an Assistant Superintendent at New Jersey State Prison.  Id. at ¶ 21. Defendant Peter Ronoghan is the business manager at the New Jersey State Prison.  Id. at ¶ 22.  Defendant Vaughn Hinman is the Storekeeper at New Jersey State Prison.  Id. at ¶ 23.

Plaintiffs have failed to set forth any factual allegations to support a claim that Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer and Woodward were personally involved in the administration of medical care to them. Moreover, as set forth in Point I, supra, Plaintiffs were provided with access to and received continuous medical care by several medical professionals.  See Hutton Decl., for the Ramos matter, Exs. B, C, D, E; Hutton Decl., for the Green matter, Exs. B, C, D, E.  There is no evidence that Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer and Woodward

30

were personally involved in the administration of medical care to Plaintiffs or that they interfered with Plaintiffs' access to such medical care. <u>Id.</u> Because a 42 <u>U.S.C.</u> § 1983 claim can not be based solely upon a theory of <u>respondeat</u> <u>superior</u> and these Defendants had no personal involvement in Plaintiffs' medical treatment, and there was no violation of Plaintiffs' constitutional rights, these Defendants are entitled to summary judgment.

<u>**POINT III**</u>

**PLAINTIFFS' CLAIMS AGAINST THE UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY AND THE OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS BELL, CORZINE, FARRELL, HAYMAN, HINMAN, PATERSON, RICCI, RONOGHAN, SHERRER, AND WOODWARD ARE BARRED BY THE ELEVENTH AMENDMENT AND BECAUSE THESE DEFENDANTS ARE NOT "PERSONS" <u>AMENABLE TO SUIT UNDER 42 U.S.C. § 1983.</u>**

Plaintiffs' claims seeking damages against the University of Medicine and Dentistry of New Jersey and Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward, in their official capacities, must be dismissed because they are barred by the Eleventh Amendment and because these Defendants, as a State entity and State officials, while acting in their official capacities, are not "persons" amenable to suit.

A.   **Plaintiffs' Claims Against the University of Medicine and Dentistry of New Jersey and Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward, in Their Official Capacities, Are Barred by the Eleventh Amendment and Therefore must Be Dismissed.**

Plaintiff seeks monetary damages against the University of Medicine and Dentistry of New Jersey and Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward in their official capacities as well as in their individual capacities. It is well-established that a federal cause of action cannot be maintained against either a state or an agency of that state. See Quern v. Jordan, 440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978); Meyer v. New Jersey, 46 F.2d 1252 (3rd Cir. 1972); Cate v. Oldham, 7 F.2d 1176 (11th Cir. 1983). The prohibition against naming a state or a state agency as a party derives from the Eleventh Amendment, which provides:

> the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of any foreign state.

[U.S. Const., Amend. XI.]

The amendment precludes federal jurisdiction over a state absent the state's consent to suit. Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 99 (1984).

32

The immunity from suit extends to "agencies or Department" of the state as well.  Id. at 101-102; Pugh, supra, 438 U.S. at 781. The state is considered the real party in interest in two circumstances -- whenever "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" College Savings Bank v. United States of America, 948 F. Supp. 400, 409 (D.N.J. 1996) (quoting Pennhurst, supra, 465 U.S. at 101 n. 11).  A state's sovereign immunity can be invoked even where the suit is against a state agency, official or employee.  Brady v. Michelin Reifenwerke, 613 F. Supp. 1076, 1080 (D. Miss. 1985).

The Eleventh Amendment prohibition of lawsuits for damages against the State in federal court also applies when a state official is sued for damages in his or her official capacity. Kentucky v. Graham, 473 U.S. 159 (1985); McClary v. O'Hare, 786 F.2d 83 (2d Cir. 1986); Miller v. Rutgers, 619 F. Supp. 1386 (D.N.J. 1985).  While prospective relief may be sought against state officials acting in their official capacity, a monetary award indistinguishable from one against the state itself is prohibited by the Eleventh Amendment even when a suit is filed against nominal state officials.  Miller, supra, 619 F. Supp. at 1392-93.

In this case, the University of Medicine and Dentistry of New Jersey is a State entity and Defendants Bell, Corzine, Farrell,

Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward are all State officials who were acting in their official capacities when Plaintiff was provided with continuous access to medical care.  Moreover, these Defendants have not consented to suit in District Court.  Therefore, the claims against the University of Medicine and Dentistry of New Jersey and Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward, in their official capacities, for monetary damages must be dismissed because they are entitled to Eleventh Amendment immunity from suit.

> **B.  The University of Medicine and Dentistry of New Jersey and Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward, in Their Official Capacities, Are Not "Persons" Amenable to Suit under 42 U.s.c. § 1983 and Therefore must Be Dismissed from the Complaint.**

42 <u>U.S.C.</u> §1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A defendant, to be liable within the meaning of the statute, must be a "person."  The Supreme Court held in <u>Will v. Michigan</u>

34

Dept. of State Police, 491 U.S. 58 (1989), that a State, or an official of the State while acting in his or her official capacity, is not a "person" within the meaning of 42 U.S.C. § 1983.  While state officials literally are persons, a suit against a state official in his or her official capacity is not a suit against the official, but is a suit against the official's office.  "As such, it is no different from a suit against the State itself."  Will, supra, 491 U.S. at 71.

The Court in Will also relied on the finding that, in enacting 42 U.S.C. § 1983, Congress did not intend to override well-established common law immunities or defenses -- specifically that of a state not to be sued without its consent.  Id.  While 42 U.S.C. § 1983 is a remedy for an official violation of federal rights, it "does not suggest that the State itself was a person that Congress intended to be subject to liability."  Id. at 68.

Here, the University of Medicine and Dentistry of New Jersey is a State entity and Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward were acting in their official capacities when Plaintiff was provided with continuous access to medical care.  As a State entity and State officials, these Defendants are not "persons" for purposes of a 42 U.S.C. § 1983 suit and, therefore, may not be sued under this statute.  Defendants have not consented to suit and, consequently, the claims against the University of Medicine and Dentistry of New

Jersey and Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward, in their official capacities, must be dismissed as a matter of law.

### POINT IV

**PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO ALLEGE ANY FACTS THAT WOULD SUPPORT A FINDING THAT DEFENDANTS ACTED WITH "EVIL MOTIVE" OR "CALLOUS INDIFFERENCE" TO A FEDERALLY PROTECTED RIGHT.**

Punitive damages are not awarded as compensation for injury. Rather, they are awarded to punish the defendant and to deter future conduct. They are only awarded if the defendant's conduct has been particularly egregious. Smith v. Wade, 461 U.S. 30, 56 (1983); Savarese v. Agriss, 883 F.2d 1194, 1204-1205 (3rd Cir. 1989). Punitive damages are never awarded as a matter of right, no matter how outrageous the defendant's behavior may be. Id. In order to award punitive damages, plaintiff must show that the a state defendant's conduct was "motivated by evil motive or intent, or. . . .[that] it involve[d] reckless or callous indifference to the federally protected rights of others." Id.; see also, Keenan v. City of Philadelphia, 983 F.2d 459, 470 (3rd Cir. 1992).

In the instant case, the Complaint is completely devoid of any facts indicating that Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, Woodward and the University of Medicine and Dentistry of New Jersey acted with an

"evil motive" or "callous indifference."  Accordingly, Plaintiffs have failed to state a claim for punitive damages against these Defendants and they are entitled to summary judgment on Plaintiffs' claims for punitive damages.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss and for summary judgment should be granted and Plaintiffs' Complaints should be dismissed.

Respectfully submitted,

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY

By: *s/Susan M. Scott*
Susan M. Scott
Deputy Attorney General

DATED: November 19, 2009

37