My NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| Matt GREEN, | : |
| Plaintiff, | : Civil No. 09-1600 (AET) |
| v. | : **OPINION & ORDER** |
| Jon CORZINE, et al., | : |
| Defendants. | : |

THOMPSON, U.S.D.J.

This matter has come before the Court upon Defendants Jeffrey Bell, Jon Corzine, Thomas Farrell, George Hayman, Vaughn Hinman, Robert Paterson, Michelle Ricci, Peter Ronoghan, Lydell Sherrer, Dr. Ralph Woodward and the University of Medicine and Dentistry of New Jersey's ("UMDNJ") Motion to Dismiss or for Summary Judgment [docket # 73] and Plaintiff's two Motions for a Temporary Restraining Order and Preliminary Injunction [89 & 98]. The Court has decided this motion after taking into consideration the submissions of both parties, without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion is granted in part and denied in part, and Plaintiff's motion is denied.

**I.   Background**

On May 27, 2008, Plaintiff Matt Green, proceeding *pro se* along with three other inmates, submitted a section 1983 class action Complaint on behalf of a putative class of state prisoners "with serious, debilitating orthopedic and prosthetic conditions," alleging that they had been deprived of their right to adequate medical care in violation of the Eighth Amendment and the New Jersey Constitution, that Defendants' actions violated New Jersey public policy, and

alleging state common law claims of medical malpractice, negligence, negligent infliction of emotional distress, and breach of contract.[1]  The Court denied class certification because Plaintiffs failed to meet the typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.  (*Ramos v. Corzine*, Civ. No. 08-2585, 6/24/08 Order 12 [docket # 2].)  Green's claims were dismissed without prejudice for failure to submit a filing fee or an application to proceed *in forma pauperis.*  (*Id.* at 12-13.)  Green's claims were reinitiated on an individual basis, although based on the same Complaint [docket # 1], on April 6, 2009 after Green's subsequently submitted *in forma pauperis* application was granted.

     Green alleges that due to his unusually wide feet, he requires special sized orthopedic shoes (size 10EEE).  Upon his arrival at the New Jersey State Prison ("NJSP"), his special shoes were confiscated.  He alleges that the regular size 10 shoes which he was then issued caused him pain and resulted in bleeding blisters and ulcers in his feet as well as radiating pain in his ankles, knees, hips, and back.  Plaintiff was eventually given a prescription for orthopedic boots and exercise shoes, but these were seized in a lockdown in August 2006 and never returned.  Plaintiff alleges that he has been unable to obtain acceptable orthopedic footwear since that time.  He contends that a variety of Defendants' policies and practices contributed to his injuries, particularly policy decisions to no longer prescribe or provide orthopedic shoes and to re-categorize his foot condition as a "sizing issue" which doctors were instructed was the purview of the DOC rather than CMS.

---

[1] Green and the other inmates also alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Rehabilitation Act of 1973 ("RHA", 29 U.S.C. § 794(a).  Green's ADA and RHA claims were dismissed without prejudice upon the Court's initial screening of the Complaint.  (5/12/09 Opinion 11 [docket # 4].)

Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, Woodward and the UMDNJ ("Defendants") have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted or for summary judgment pursuant to Fed. R. Civ. P. 56. Defendants assert that their motion should be granted because they were not deliberately indifferent to Green's medical needs. They further assert that Green's claims should fail because they are improperly based upon a theory of respondeat superior and because Defendants are not "persons" amenable to suit under Section 1983. Finally, Defendants move to dismiss Plaintiff's claims for punitive damages.

Defendant Corzine is the Governor of the State of New Jersey. Defendant Hayman is the Commissioner of the DOC. Defendant Sherrer was the Acting Assistant Commissioner of the DOC. Defendant Paterson is the Director of the Division of Operations at the DOC. Defendant Farrell is the Assistant Director of the Division of Operations at the DOC. Defendant Woodward is the Director of Medical Services at the DOC. Defendant Ricci is the Administrator of New Jersey State Prison ("NJSP"). Defendant Bell was an Assistant Superintendent at NJSP. Defendant Ronoghan is the Business Manager at NJSP. Defendant Hinman is the Storekeeper at NJSP.

The UMDNJ allegedly entered into an interagency agreement with the DOC to provide medical care to inmates beginning in June 2008. (Compl. ¶ 34.) Prior to that, medical care was contractually provided to inmates by Correctional Medical Services, Inc. ("CMS").[2] (*Id.*)

II. **Legal Standard**

---

[2]Green has also filed claims against CMS, several CMS employees, and the clinic that provided the prosthetics consults. However, those defendants have not joined in this motion.

1.  Rule 12(b)(6) Standard

Under Fed. R. Civ. P. 12(b)(6), the defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court must accept as true all of a plaintiff's factual allegations, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). A complaint must contain sufficient factual matter to state a claim that is facially plausible. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

2.  Summary Judgment Standard

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, the Court considers the facts drawn from the "pleadings, the discovery and disclosure materials on file, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

To survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party that will bear the burden of proof at trial "must make a

showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. This requires more than the "mere existence of a scintilla of evidence" supporting the non-moving party. *Anderson*, 477 U.S. at 252.

**III.    Analysis**

In order to succeed in a Section 1983 action claiming inadequate medical treatment, a prisoner must show that a defendant exhibited "deliberate indifference" to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). "Deliberate indifference," is a subjective standard of liability consistent with recklessness as that term is defined in criminal law. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Thus, allegations of simple medical malpractice based on negligence do not rise to the level of a violation of the Eighth Amendment. *Id.*

1.    Liability of Non-Medical Prison Officials

Defendants assert that they did not exhibit deliberate indifference towards Green's medical needs as Green was actively being treated by medical personnel. The Third Circuit has held that absent actual knowledge or reason to believe that medical personnel are mistreating or failing to treat a prisoner, non-medical prison officials cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Durmer*, 991 F.2d at 69. At all points relevant to this litigation, Green was under the care of medical personnel. Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, and Sherrer are not physicians or medical personnel and therefore cannot be considered deliberately indifferent to Green's medical needs unless they were personally aware of Green's injuries and subsequently acted with deliberate indifference or there is some other

basis for liability.

First, Green asserts that after his footwear was improperly confiscated in August 2006 he submitted a property claim form to Defendant Ricci, who refused to return or replace his orthopedic shoes. (Compl. ¶ 65.) However, the Court does not believe it is reasonable to infer that submission of a property claim form alone would have put Ricci on notice of any injuries Green suffered from his lack of proper footwear or to the fact that this medical need was not being adequately handled and treated by medical staff. Thus, Green's allegations as to Ricci's role in the confiscation of his footwear are insufficient to state a claim of deliberate indifference as a matter of law.

Second, Green alleges that Defendant Hinman was acting with deliberate indifference on several occasions when he issued Green improperly sized boots. Green also specifically alleges that Hinman was aware of his suffering and problems in prior years from wearing inappropriate footwear. Green contends that after the August 2006 confiscation of his prescription footwear Hinman issued him regular size 10 boots which caused bleeding ulcers, lacerations, and painful bruising. However, Green's records indicate that he was temporarily provided with size 10 ½ boots "to get [him] threw until proper footware could be issued" and that he was informed on September 14, 2006 that his extra wide boots were being reordered. (*Id*., Ex. B at Green 11.) After September 28, 2006, Green did not complain again about blisters or the lack of extra wide boots until April 29, 2007. (*Id*. at Green 13, 15.) Since it appears that Green was provided with a temporary solution and that extra-wide boots were reordered, the Court finds that Hinman was not deliberately indifferent to Green's medical needs in this instance.

Green also contends that Hinman improperly issued him ordinary size 10 boots on May

14, 2007 and that Hinman falsified the inmate store receipt so that it appears the boots were size 10EEE.  Green asserts that he addressed several request and remedy forms to Hinman, Ricci and Hayman which were ignored.  The boots Hinman provided to Green on May 14, 2007 were size 10XW, which is equivalent to 10EEE.  (*Id*. at Green 16.)  In terms of reviewing Green's request and remedy forms, defendants are not required to do more than "review[ ] ... [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment." *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005).  A quick review of Green's records would have shown that he was supplied with footwear that was equivalent to what was requested.  Thus, Hinman, Ricci, and Hayman were not deliberately indifferent to Green's medical needs.[3]

Finally, Green alleges that the prison health services manager informed Defendant Ronoghan of Green's need for orthopedic boots on December 17, 2007, but that Ronoghan ignored this "written directive" and instead had Hinman issue Green a pair of ordinary size 11 boots which created a new set of bleeding ulcers.  (Compl. ¶ 72-73.)  Green's records support these allegations.  A December 17, 2007 memorandum written by the Health Services Manager for NJSP informed Green that Ronoghan and Bell had been told that properly fitting boots should be provided for Green, even if they have to be specially ordered.  (Hutton Decl., Ex. B at Green 30.) Despite this memorandum, receipts show that Green was provided with size 11 boots

---

[3]Green's medical records indicate that he continued to seek medical treatment for blisters and open sores through October 2007 and was recommended for a prosthetics consult on October 12, 2009.  (*Id*., Ex. C at Green 53-54.)  However, the Court finds that this does not support a finding than Hinman, Ricci, or Hayman was deliberately indifferent to Green's medical needs given he had already been provided him with footwear that was thought to be medically adequate and Green was in the constant care of medical professionals through that time period.

on March 20, 2008.  (*Id.* at Green 29.)  Further, while Green filed an Inmate Remedy Request Form on March 21, 2008 complaining about his receipt of the size 11 shoes, he was not informed by Hinman until May 6, 2008 that the size 10EEE boots he required had been reordered.  (*Id.* at Green 28.)  Green still had not received the size 10EEE boots as of May 28, 2008.  (*Id.*)  The Court finds that the evidence raises a genuine issue of material fact as to Hinman and Ronoghan's personal awareness of Green's need for specially sized boots and deliberate indifference to this need following the December 17, 2007 memorandum.  Therefore, the claims against Hinman and Ronaghan will not be dismissed.

 None of the allegations in Green's complaint suggest that Bell, Corzine, Farrell, Paterson, or Sherrer knew or had any reason to believe that prison medical staff were mistreating or not treating Green.[4]

While Dr. Woodward and the UMDNJ did not directly treat or diagnosis Green, neither is a "non-medical" prison official.  *See Afdahl v. Cancellieri*, 2009 WL 5213992, at * 6 (D.N.J. Dec. 21, 2009) (physician who was chief of dental services was not a "non-medical" prison official).  Woodward is a physician and is the Director of Medical Services at the DOC.  The UMDNJ has contracted to provide healthcare services for the DOC.  Both are clearly involved in the provision of medical care.  Thus, the claims against Woodward and the UMDNJ cannot be dismissed solely based on *Spruill* and *Drumer*.

The claims against the UMDNJ must fail, however, as the Complaint contains no specific allegations of deliberate indifference on the part of the UMDNJ.  Neither UMDNJ nor any of its

---

[4]Bell's personal awareness of Green's need for specially sized boots could be inferred from the December 17, 2007 memorandum.  However, Green does not include Bell in his allegations regarding that incident.  (*See id.* at Green 30.)

employees are alleged to have known about Green's mistreatment or failure to be treated, nor does Green allege that any of the UMDNJ's policies or practices caused him any injury. Thus, Green has failed to state a claim against the UMDNJ upon which relief has been granted. Green does include specific allegations regarding actions taken by Dr. Woodward, as discussed below.

### 2. Supervisory Liability

Defendants also assert that Green's claims against them fail as a matter of law because they are improperly premised on a theory of respondeat superior.[5] Liability under Section 1983 cannot be premised solely upon a theory of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). A defendant's personal involvement in the alleged wrongs must be shown. *Id.* at 1208.

There are two theories of liability under which a supervisor may be personally liable. The first theory of liability "provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004).

Green's Complaint alleges that Defendants Ricci, Bell, Ronoghan and Hinman have refused to fill prescriptions or refused to authorize funds to fill prescriptions for orthopedic items. (Compl. ¶ 51.) However he only specifically alleges that Hinman, Rohoghan, and Ricci were responsible for his being given regular size 10 or 11 shoes rather than having his prescription for specially sized boots filled. (Compl. ¶ 66, 67, 70, 73.) Green asserts that on

---

[5] This argument is asserted by all Defendants who have joined in the motion except the UMDNJ.

several instances Defendant Hinman failed to fill his prescription for size 10EEE boots.  These instances, however, are discussed in full above and Green's claims against Hinman and Ronoghan are not based on a theory of supervisory liability–they are based on a theory of direct involvement.

In addition, the Complaint alleges that Defendants Hayman, Sherrer, Paterson, and Ricci knew that prescribed orthopedic items were being confiscated during routine cell searches, and that they failed in their supervisory capacity to properly train custody staff or to otherwise prevent staff from improperly confiscated these items.  (Compl. ¶ 53.)  Green alleges that his orthopedic footwear was improperly confiscated during a lockdown and search of NJSP in August 2006.  (Compl. ¶ 63, 64.)  The only individual alleged to be involved in that incident in a supervisory capacity is Ricci.  Thus, Green's allegations fail to state a claim as a matter of law against Hayman, Sherrer, and Paterson.  The Complaint, however, states with sufficient particularity Ricci's involvement that the Court finds that it is plausible that Ricci knew and acquiesced to his subordinates' activities. Defendant's brief does not address Ricci's potential supervisory liability. Plaintiff alleges that Ricci was aware that prison personnel frequently took prisoners' personal property whenever a lockdown and search was ordered.  He also alleges that Ricci was aware that various prisoners' special orthopedic footware were among the property so confiscated, but that Ricci did nothing to correct this problem.  (*Id.* ¶¶ 63-64.)

The second theory of liability provides that "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Luzerne County Juvenile Detention Center*, 372 F.3d

at 586 (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)).

The Complaint asserts that Defendant Corzine issued directives ordering the DOC to freeze hiring and reduce operating costs in all departments, and that the result of these directives was the reduction of medical services and more stringent guidelines to obtain approvals for consultations or treatment referrals. (Compl. ¶ 49.) The Court finds that the allegations regarding Defendant Corzine's directives fail to state a claim upon which relief can be based as a matter of law. Corzine's decision to issue a broad, DOC-wide directive of this type does not plausibly lead to the inference that he was aware of or deliberately indifferent to the risk of the specific type of inadequate medical care of which Green complains. There is no allegation or evidence that Corzine was made aware of the risks associated with reducing consultations or treatment referrals or that he had this in mind when he issued the alleged directives.

Green also contends that Defendants Hayman, Sherrer, Paterson, Farrell, and Woodward implemented a fiscal austerity plan wherein speciality referrals made by CMS doctors are screened and disapproved for non-medical reasons related to cost. (*Id.* ¶ 50.) In addition, Green alleges that these Defendants negotiated a contract with CMS which improperly extended the delivery date for specialty care referrals and required a minimum number of prisoners to accumulate on the roster for a specialty care clinic before a clinic or consultation would be scheduled. (*Id.* ¶ 47.) Green also argues that Defendants Woodward and Farrell authorized a policy which allowed "sick call screening staff to defer referring a physician to a prisoner until the prisoner had complained about his or her condition at least 3-times." (*Id*. ¶ 54.) However, these allegations are not relevant to Plaintiff's claims. Plaintiff's claims concern his inability to obtain specialty footware. There is nothing in the Complaint that suggests that Plaintiff's

difficulty in seeing medical specialists contributed to that problem.

Green also asserts that Defendants Hayman, Sherrer, Paterson, Farrell, and Woodward directed medical care providers "not to prescribe or furnish orthopedic footwear needed for physical exercise and rehabilitation programs." (*Id.* ¶ 50.) If this allegation is accepted as true, it supports a plausible inference that Plaintiff's failure to obtain properly sized shoes was a result of a policy promulgated by these Defendants. It is plausible that, had such a policy not been in place, Plaintiff would have been specifically ordered properly-sized footwear by medical officials. Once again, Defendants have not made any argument or presented any evidence with respect to these Defendants' policy making responsibilities or what policies actually existed during the time relevant to this lawsuit.

In conclusion, the only Defendants against whom there is any evidence of personal awareness and deliberate indifference to Green's injuries and needs are Hinman and Ronaghan. Defendants did not brief the adequacy of Green's claims against Defendant Ricci based upon supervisory liability for the alleged confiscation of Plaintiff's footwear in August 2006. Nor did Defendants brief whether DOC had a policy prohibiting medical officials from prescribing specialty footwear to prisoners or who was responsible for this policy. The Court finds that Green's allegations as to those policies are sufficient to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The matter has been insufficiently briefed for the Court to address those claims under Fed. R. Civ. P. 56(b)'s summary judgment standard.

### 3. The Eleventh Amendment

The Eleventh Amendment prohibits lawsuits for damages in federal court against state officials being sued in their official capacity. *Lakaris v. Thornburg*, 661 F.2d 23, 25-26 (3d Cir.

1981).  However, to the extent that Defendants are being sued in their official capacities for prospective relief, Green's claims were properly brought under Section 1983 and are not barred by the Eleventh Amendment.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 79 n.10 (1989).  To the extent that the individual Defendants are being sued personally for monetary damages, those claims are not barred either.  *See Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).  However, the UMDNJ is an instrumentality of the state, so it is protected by the Eleventh Amendment, and the claims against UMDNJ must be dismissed.  *See Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997).

        4.      Punitive Damages

As the Third Circuit has explained, "for a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).  Such an inquiry into the subjective motives of a defendant is generally a poor subject for summary judgment, especially when the factual record is not fully developed.  Therefore, the Court will not render judgment on this issue at this time.

        5.      Plaintiff's State Law Claims

Defendants do not present any argument as to whether any of Plaintiff's state law claims should be dismissed.  Therefore, to the extent that Defendants are requesting that this Court dismiss Plaintiff's state law claims, that request is denied, except with regard to UMDNJ, which is immune from this suit by reason of the Eleventh Amendment.

**IV.**    **Plaintiff's Motions for a Temporary Restraining Order and Preliminary**

**Injunction**

In his Motions for a Temporary Restraining Order and Preliminary Injunction, Plaintiff alleges that he is still being denied the specialty footware he requires. He further alleges that Defendants are now retaliating against him for his filing of this lawsuit, in contravention of the First Amendment. The two motions are in substance identical.

In deciding whether to grant a Temporary Restraining Order or Preliminary Injunction, a court must consider four factors: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985))**.**

In this instance, the Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits. Plaintiff's allegations of retaliation are in substance the same kinds of allegations that form the basis for his lawsuit. In other words, he alleges that Defendants have continued to fail to respond to his medical needs both before and after filing his lawsuit. Therefore, there is no basis for inferring that the latter acts are a special case of retaliation against Plaintiff's actions in this lawsuit. Nor has Plaintiff–at this stage–shown likelihood of success on the merits of his underlying claims. While Plaintiff's allegations support an inference that Defendants acted with deliberate indifference, Plaintiff has not produced substantial evidence proving that his Constitutional rights have been violated. As was discussed above, there remains a question of fact as to whether and when Defendants were aware of the extent of

Plaintiff's injuries and his need for size 10EEE footwear.  The Court does not find that the evidence now available suggests that Plaintiff will prevail at trial on this point.

Furthermore, evidence provided by Defendants tends to show that Plaintiff has now been ordered new footwear.  Therefore, it does not appear that Plaintiff is likely to suffer irreparable harm in the absence of a Court injunction ordering specific actions on the part of Defendants.

**V.    Conclusion**

For the foregoing reasons, and for good cause shown, it is on this 19th day of March, 2010,

ORDERED that Defendants' Motion to Dismiss [73] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that Plaintiff's Eighth and Fourteenth Amendment claims (Counts I & III) are DISMISSED as against Defendants Bell and Corzine; and it is further

ORDERED that all claims against Defendant University of Medicine and Dentistry of New Jersey are DISMISSED; and it is further

ORDERED that Plaintiff's Motions for a Temporary Restraining Order and Preliminary Injunction [docket nos. 89 and 98] are DENIED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.