NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Matt GREEN,<br><br>    Plaintiff,<br><br>v.<br><br>Jon CORZINE, et al.,<br><br>    Defendants. | Civ. No. 09-1600<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

### I.   INTRODUCTION

This matter comes before the Court upon Plaintiff Matt Green's Motion for Summary Judgment [docket #144] and Defendants Jeffrey Bell, Jon Corzine, Thomas Farrell, George Hayman, Vaughn Hinman, Robert Paterson, Michelle Ricci, Peter Ronoghan, Lydell Sherrer, and Ralph Woodward's (collectively, "State Defendants" or "Defendants") Motion for Summary Judgment [202]. The Court has decided the motions after considering the parties' written submissions, without holding oral argument. For the reasons given below, Plaintiff's motion is denied, and Defendants' motion is granted in part and denied in part.

### II.   BACKGROUND

**A.  Factual History**

Plaintiff is an inmate currently incarcerated at New Jersey State Prison ("NJSP") under the care of the New Jersey Department of Corrections ("DOC"). (Compl. ¶ 58.) He claims that he requires extra-wide size 10EEE shoes to accommodate his unusually wide feet. (*Id.*) When he was first incarcerated in New Jersey in 1999, he was given size 10 ordinary boots. (*Id.* ¶ 59.) These boots caused blisters and ulcers, and Plaintiff was eventually given a prescription for size

1

10EEE shoes. (*Id.* ¶¶ 60–61.) He was given a pair of size 10EEE boots and a pair of size 10EEE sneakers, and continued to receive boots and sneakers in this size through 2006. (*Id*. ¶¶ 61–62.)

On August 4, 2006, Defendant Ricci, the administrator of NJSP, ordered a lockdown and search of the facility. (*Id.* ¶ 63.) Plaintiff's unit was searched, and he was forced to leave behind his sneakers and boots. (*Id.* ¶ 65.) When he returned to his cell, his shoes and boots were missing. (*Id.*) Plaintiff submitted a claim for his boots and shoes, and his shoes were returned, but his boots never were. (Green Decl. ¶ 16) [144-1]. When Plaintiff requested new boots, Defendant Hinman, the NJSP Storekeeper, issued him ordinary size 10 boots, which caused Plaintiff problems. (*Id*. ¶ 17.) Hinman then temporarily issued Plaintiff ordinary size 10.5 boots until his proper size could be ordered. (Hutton Decl. Ex. B, at Green 11) [73-3]. On September 14, 2006, Plaintiff was informed that his extra-wide boots were being reordered, and he did not complain again from September 28, 2007 until April 29, 2007, when he again requested size 10EEE boots. (*Id*. at Green 11, 13, 15.)

On May 14, 2007, Plaintiff received extra-wide, size 10XW boots. (*Id*. at Green 16.) Defendants claim that the size 10XW boots are equivalent to size 10EEE. (*Id.*) Nevertheless, Plaintiff complained that the boots were still too tight and caused him blisters. (*Id.*)

On December 17, 2007, Mary Lemanski, the NJSP Health Services Manager, sent an email (the "Lemanski letter") to Defendant Ronoghan, the NJSP Business Manager, stating that the size 10XW shoes were causing sores and blisters on Plaintiff's feet and that Plaintiff would need to be properly fitted for new footwear. (Green Decl. Ex. A, at Green 1538) [144-1]. Her email indicated that responsibility for providing proper footwear lay with the DOC, not Correctional Medical Services, Inc. ("CMS")—the business contracted with the responsibility of providing medical services to NJSP. (*Id.*); (*see also id.* at Green 872–873). Ronoghan

forwarded the email to Defendant Hinman with a notation directing Hinman to "[p]lease check Inmate Green's card. If due for boot replacement, please size him" and order new boots. (*Id.* at Green 1538.) Hinman issued Plaintiff size 11 boots on March 20, 2008, (Green Decl. Ex. A, at Green 1539) [144-1], but Plaintiff complained that these boots were too long and still too tight. (Green Decl. Ex. A, at Green 1038.) Plaintiff was advised on May 2, 2008 that his requested extra-wide boots had been ordered. (*Id.*) Hinman claims he received the new boots in June and tried to send them to Plaintiff but that he sent them to the wrong unit. (Hsia Decl. Ex. A, at Green 968) [202-3]. On September 19, 2008, Hinman placed a new order for size 10EEEE boots, which were delivered to Plaintiff in early October. (*Id.* at Green 1541–47); (Green Decl. ¶ 56) [144-1].

Plaintiff claims that his inability to secure proper-fitting footwear has caused him pain and resulted in bleeding, blisters, and ulcers in his feet as well as radiating pain in his ankles, knees, hips, and back.

### B. Procedural History

On May 27, 2008, Plaintiff, proceeding *pro se* along with three other inmates, submitted a section 1983 class action Complaint on behalf of a putative class of state prisoners "with serious, debilitating orthopedic and prosthetic conditions," alleging that they had been deprived of their right to adequate medical care in violation of the Eighth Amendment and the New Jersey Constitution, that Defendants' actions violated New Jersey public policy, and alleging state common law claims of medical malpractice, negligence, negligent infliction of emotional distress, and breach of contract.[1] (Compl.) [1]. The Court denied class certification because

---

[1] Green and the other inmates also alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Rehabilitation Act of 1973 ("RHA", 29 U.S.C. § 794(a). Green's ADA and RHA claims were dismissed without prejudice upon the Court's initial screening of the Complaint. (Opinion 11, May 12, 2009) [4].

3

Plaintiffs failed to meet the typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.  Order at 12, *Ramos v. Corzine*, Civ. No. 08-2585 (D.N.J. June 24, 2008) [2].  But the Court permitted Plaintiff's claims to proceed on an individual basis.  Order at 1, *Ramos v. Corzine*, Civ. No. 08-2585 (D.N.J. Apr. 6, 2009) [49].

The State Defendants moved to dismiss the complaint, and on March 22, 2010, the Court granted the motion in part and denied it in part.  (Opinion, Mar. 22, 2010) [110].  That opinion contained several findings relevant to the instant motion.  First, we found that Defendants Hinman, Ricci, and Hayman were not liable for any injuries plaintiff suffered as a result of the allegedly deficient boots issued to Plaintiff on September 28, 2006, and May 14, 2007, because the record indicated that he was given size 10.5 boots in September as a temporary solution and that Defendants believed the size 10XW boots issued in May were equivalent to what was requested.  (*Id.* at 6–7.)  However, we held that the Complaint sufficiently alleged that Defendants Hinman and Ronoghan were personally aware of and deliberately indifferent to Plaintiff's medical needs after they received the Lemanski letter in December 2007, and we therefore allowed the claims to proceed against these two defendants.  (*Id*. at 7–8.)

Second, we held that Defendant Ricci's alleged role in the confiscation of footwear during the 2006 lockdown was insufficient to support a claim of deliberate indifference on a theory of personal awareness.  (*Id.* at 6.)  However, we found that Plaintiff properly alleged that Ricci was liable for the confiscations in her supervisory capacity because it was plausible that Ricci knew of and acquiesced to her subordinates' activities.  (*Id.* at 10.)  Therefore, we allowed the claim against Ricci to proceed under a theory of supervisory liability.

Third, we found that Plaintiff asserted a plausible claim against Defendants Hayman, Sherrer, Paterson, Farrell, and Woodward on the grounds that they promulgated a policy not to

4

prescribe orthopedic footwear, and that this policy led to Plaintiff's inability to obtain properly-sized shoes. (*Id.* at 12.) Finally, Defendants Bell, Corzine, and the UMDNJ were dismissed because Plaintiff did not properly state a claim against these defendants.

Thus the following claims against the State Defendants remain: claims brought under 42 U.S.C. § 1983 for denial of adequate medical care in violation of the Eighth Amendment against Hinman and Ronoghan, against Ricci under a theory of supervisory liability, and against Hayman, Sherrer, Paterson, Farrell, and Woodward under a theory of policymaker liability; claims against all State Defendants under the New Jersey Civil Rights Act; and various state common law claims. Plaintiff also seeks punitive damages.

The remaining state Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56. Defendants assert that their motion should be granted, first, because Defendants Hinman and Ronoghan tried to secure proper-fitting shoes for Plaintiff, and at most they were negligent, but not deliberately indifferent. Second, they argue that the evidence cannot support the allegation that Defendant Ricci was aware that her subordinates were confiscating footwear and acquiesced in this practice. Third, they argue that the evidence cannot support the allegation that the DOC had a policy prohibiting medical officials from prescribing specialty footwear. Finally, they argue that the state law claims should be dismissed because of sovereign and qualified immunity and that punitive damages are unwarranted.

### III. LEGAL STANDARD

**A. Motion for Summary Judgment**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will

5

"view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Id.*; *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More specifically, the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). More than a mere "scintilla of evidence" supporting the non-moving party is required. *Anderson*, 477 U.S. at 252. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Celotex*, 477 U.S. at 323–24.

## IV. ANALYSIS

### A. Section 1983 Claims Against Defendants Hinman and Ronoghan

Plaintiff claims that the State Defendants denied him adequate medical care in violation of the Eighth Amendment. To succeed on such a claim, Plaintiff must demonstrate (1) that defendants were deliberately indifferent to his medical needs, and (2) that those needs were serious.[1] *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is "deliberately indifferent" if the official "knows of and

---

[1] The Third Circuit has defined a "serious medical need" as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one that would result in "a lifelong handicap or permanent loss" if left untreated. *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal citations and quotations omitted). Defendants do not appear to argue that Plaintiff's injuries were not serious, and we therefore do not address this issue.

disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer*, 511 U.S. at 837–38. Defendants argue that Hinman and Ronoghan were not deliberately indifferent because, as soon as they learned of Plaintiff's need for extra-wide footwear, they began the process of providing him with the footwear. (Defts.' Br. in Supp. of Mot. for Summ. J. 13) [202]. The Defendants acted in good faith, they argue, and any delay was the result of negligence, not deliberate indifference. (*Id.*)

Although the Defendants may ultimately prevail on this issue, we cannot say that the evidence is so one-sided that Defendants must prevail as a matter of law. *See Anderson*, 477 U.S. at 251–52. Ronaghan received the Lemanski letter on December 17, 2007, informing him that Plaintiff had developed "sores, blisters, and skin breakdown on both of his feet due to improper shoe size." (Green Decl. Ex. A, at Green 1538) [144-1]. Ronoghan immediately forwarded the letter to Hinman, but tellingly, Ronoghan instructed Hinman to find out first if Plaintiff was due for new footwear. One possible inference from this instruction is that Ronoghan did not want Hinman to provide Plaintiff with new footwear unless Plaintiff was due for a replacement. A jury could infer from this that Ronoghan was aware of Plaintiff's condition and chose not to remedy it immediately.

The same is true for Hinman. Once he received the Lemanksi letter, Hinman was also on notice of Plaintiff's need for extra-wide shoes. However, Hinman did not issue Plaintiff new footwear until March 20, 2008, and even then issued incorrect size 11 boots. Plaintiff immediately filed a complaint that the boots were the wrong size, but it took until May 2, 2008,

for Hinman to inform Plaintiff that size 10EEE boots had been ordered.  Three months later, on August 12, Plaintiff again complained that he had not received properly-sized boots, and Hinman responded that he had accidentally sent the new boots to the wrong unit.  Another month passed before Hinman re-ordered properly-sized boots, and Plaintiff did not receive the new boots until October 2007.  In sum, nearly 10 months passed from when Hinman and Ronoghan received the Lemanski letter until Plaintiff actually received extra-wide boots.  A jury may well find that the delays were a result of mere negligence; however, a jury might instead infer that the delays resulted from the Defendants' reckless disregard of the harm Plaintiff was suffering.  Accordingly, we deny summary judgment as to the claims against Hinman and Ronoghan for denial of adequate medical care.

These claims are limited, though, by the state's sovereign immunity under the Eleventh Amendment.  The Eleventh Amendment prohibits lawsuits for damages in federal court against state officials being sued in their official capacity.  *Lakaris v. Thornburg*, 661 F.2d 23, 25–26 (3d Cir. 1981).  However, to the extent that Defendants are being sued in their official capacities for prospective relief, Plaintiff's claims are properly brought under Section 1983 and are not barred by the Eleventh Amendment.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 79 n.10 (1989).  And to the extent that the individual Defendants are being sued personally for monetary damages, those claims are not barred either.  *See Hafer v. Melo*, 502 U.S. 21, 25–26 (1991).

### B. Section 1983 Claim Against Defendant Ricci

Section 1983 liability cannot be premised solely on a theory of *respondeat superior*. *Natale*, 318 F.3d at 583–84.  Rather, a supervisor must be personally involved in the alleged wrongs.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   There are two theories of supervisory liability under which supervisors can be liable: (1) if they "established and

8

maintained a policy, practice or custom which directly caused [the] constitutional harm;" and (2) if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citations omitted).

    In our Opinion on the State Defendants' motion to dismiss, we found that Defendant Ricci was not personally involved in violating Plaintiff's rights by confiscating his footwear, but we said she could be liable by virtue of her supervisory role if she knew of and acquiesced in her subordinates' practice of confiscating orthopedic items. (Opinion 10, Mar. 22, 2010) [110]. Defendants now argue that Plaintiff has not supported his allegation that Ricci personally knew that items were being confiscated or that she failed to prevent it. (Defts.' Br. in Supp. of Mot. for Summ. J. 15) [202]. We agree. Indeed, when Plaintiff was asked during his deposition what evidence he had to support this claim, he admitted that he had none but hoped to uncover evidence through discovery. (Hsia Decl. Ex. B, at 78:22–24, 80:1–6) [202-3]. Plaintiff now asserts that he "did everything in his power to receive the documents he . . . requires in order to file a correct opposition" to Defendants' motion for summary judgment but could not obtain them. (Pl.'s Opp. Br.) [212 at 17]. This argument is unavailing: Plaintiff has filed several motions to compel and requests for the production of documents, and the matter has been thoroughly litigated. (*See* docket # 96, 143, 159.) The Court is confident that Plaintiff has received all the discovery to which he is entitled. Discovery is now closed, and Plaintiff must support his claims with whatever evidence he has.

    Plaintiff argues that Defendants' motion should nevertheless be denied because there is enough evidence to show Ricci was personally involved. Specifically, he argues that numerous

inmates reported lost property after the lockdown and that Ricci responded by suspending the inmate grievance process and creating a policy to cover up any wrongdoing. (Pl.'s Opp. Br.) [212 at 18–19]. However, the only evidence Plaintiff marshals to support this allegation is a memorandum from Ricci stating that claims for lost property resulting from the lockdown must be filed on a separate claim form rather than the inmate grievance form. (Green Decl. Ex. A, at MGG9) [214-2]. We fail to see how a directive that property claims be made on a particular form demonstrates that NJSP officials confiscated Plaintiff's footwear or that Ricci was personally aware of any confiscation, and we find this memorandum, along with the rest of the evidence before us, insufficient to show that Ricci is liable for any alleged wrongs. We therefore dismiss this claim.

### C. Section 1983 Claims Against Hayman, Sherrer, Paterson, Farrell, and Woodward

The second theory of supervisor liability provides that "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Luzerne*, 372 F.3d at 586 (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). In our opinion on the State Defendants' Motion to Dismiss, we allowed the claims against these defendants to go forward because we found that Plaintiff asserted a plausible claim that they had promulgated a policy not to prescribe orthopedic footwear. (Opinion 12, Mar. 22, 2010) [110]. We now find that Plaintiff has failed to present sufficient evidence to support his claim and survive summary judgment.

Plaintiff was asked during his deposition what evidence he had to support his allegation against each Defendant. When asked what evidence he had to support his claim that Paterson was responsible for abolishing a policy that CMS would provide footwear to needy inmates,

Plaintiff stated, "I'm still in the process of hoping for discovery on these issues to be able to provide this." (Hsia Decl. Ex. B, at 25:17–23) [202-3]. He was then asked what evidence he had that Hayman was involved in the policy, and again he said, "I'm still waiting for discovery in these matters." (*Id.* at 25:24–26:13.) He provided the same answer with regard to Sherrer, (*id.* at 27:12–14), and Farrell, (*id.* at 38:25–39:16). In addition, Plaintiff has failed to present any evidence that would support a claim of deliberate indifference against Woodward.

In opposing the motion, Plaintiff states that the Defendants "have denied plaintiff relevant documentation relating to these issues" (Pl.'s Opp. Br.) [212 at 20], and, again, Plaintiff is too late. Discovery is closed, and all of the outstanding discovery issues have been resolved. (*See* docket # 96, 143, 159.) He must oppose the motion with the evidence on hand, and we find that the evidence is insufficient to support the claims against any of these Defendants. Particularly, Plaintiff argues that he has satisfied his burden simply by producing two memoranda authored by Ricci: one detailing several changes to the Inmate Clothing Policy, which includes a directive that sneakers will no longer be replaced but must be purchased through the Commissary, (Green Decl. Ex. A, at Green 870) [144-1], and another stating that unserviceable boots will be replaced with sneakers rather than new boots, (*id.* at Green 871). This evidence does not show that Defendants Hayman, Sherrer, Paterson, Farrell, and Woodward were involved in the change of policy. Even if it did, Plaintiff's claim would still fail because there is no evidence the policy was changed with awareness of or deliberate indifference to the risk of the specific type of inadequate medical care of which Plaintiff complains. Moreover, there is no evidence that the delays Plaintiff experienced in receiving footwear were the result of any particular policy rather than simply the actions or inactions of Defendants Hinman and Ronoghan. The Lemanski letter clearly states that providing footwear is the responsibility of the

11

DOC. The State Defendants do not dispute their responsibility, and there is no evidence that any Defendant denied Plaintiff footwear based on a particular policy. Rather, Plaintiff's claims are only viable as to Defendants Hinman and Ronoghan who are alleged to have denied Plaintiff adequate footwear *in spite of* their official duty to do so.

### D. State Law Claims

In addition to the constitutional claims against the State Defendants asserted pursuant to 42 U.S.C. § 1983, Plaintiff also alleges state law claims for negligence, "violation of public policy," negligent infliction of emotional distress, and violation of the New Jersey Civil Rights Act. As explained below, we find that only those claims alleged against Defendants Hinman and Ronoghan in their individual capacity may proceed.

#### i. New Jersey Civil Rights Act

The New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.*, is a state law analogue to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured under the New Jersey Constitution. Accordingly, NJCRA is generally interpreted to be coextensive with its federal counterpart. *See Celestine v. Foley*, 2010 WL 5186145, at *6 (D.N.J. 2010); *Jefferson v. Twp. of Medford*, 2010 WL 5253296, at *13 (D.N.J. 2010); *Chapman v. New Jersey,* 2009 WL 2634888, at *3 (D.N.J. 2009); *Slinger v. New Jersey,* 2008 WL 4126181, at *5 (D.N.J. 2008), *rev'd in part on other grounds*, 366 F. App'x 357 (3d Cir. 2010).

Given our conclusion in the previous sections that Plaintiff has failed to adequately support his § 1983 claims against Defendants Ricci, Hayman, Sherrer, Paterson, Farrell, and Woodward, we will dismiss the NJCRA claims against these defendants as well because the basis for Plaintiff's NJCRA claims is the same alleged wrong underlying his § 1983 claims, i.e., denial of adequate medical care. Furthermore, because sovereign immunity for the states under

the Eleventh Amendment applies as much to NJCRA suits as to § 1983 suits, *see Slinger,* 2008 WL 4126181, at *5, we find that the NJCRA claims may proceed against Defendants Hinman and Ronoghan only in their official capacity for prospective relief and in their individual capacity for monetary damages; any NJCRA claims against Defendants in their official capacity for damages are barred.

We reject, however, the Defendants' additional argument that they are protected by qualified immunity: we cannot say as a matter of law that the harms Plaintiff alleges were not violations of "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An inmate's right to adequate medical care is clearly established, *see Farmer*, 511 U.S. 825; *Estelle*, 429 U.S. 97, and there is a genuine issue of material fact as to whether Hinman and Ronoghan violated that right.

      ii.      **Negligent Infliction of Emotional Distress**

Plaintiff asserts a claim for negligent infliction of emotional distress ("NIED"). The direct tort of NIED, as opposed to one based on bystander liability, is "understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1128 (N.J. 1989). For the reasons explained more fully above, we will allow this claim to proceed against Hinman and Ronoghan because there is sufficient evidence to conclude that the delays in providing Plaintiff with proper footwear were caused by these defendants' negligence, and that such negligence was a proximate cause of Plaintiff's injuries. The claim must be dismissed against all other State Defendants, however, because Plaintiff has not adequately supported his allegation that these other defendants were responsible for any harm he suffered.

      iii.      **Violation of Public Policy**

Plaintiff's complaint argues that defendants have "violated public policy" by "depriving plaintiff of appropriate care and treatment, contrary to" the NJCRA. (Compl. ¶ 133–36.) This is not a cause of action separate from those already alleged and thus will be dismissed against all Defendants.

### iv.     Punitive Damages

Defendants argue that Plaintiff's claim for punitive damages must be dismissed because he has not shown that the Defendants acted with the "evil motive" or "callous indifference" required for punitive damages to attach to a § 1983 claim. *See Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). We cannot say as a matter of law that there is insufficient evidence to support a claim for punitive damages against Hinman and Ronoghan. As we stated when considering the State Defendants' previous motion: "Such an inquiry into the subjective motives of a defendant is generally a poor subject for summary judgment, especially when the factual record is not fully developed. Therefore, the Court will not render judgment on this issue at this time." (Opinion 13, March 22, 2010) [110]. With discovery complete, we still find that there is a genuine issue of material fact as to Hinman and Ronoghan's subjective motives, and we thus deny summary judgment on this issue.

V.  CONCLUSION

For the reasons given above, IT IS on this 22nd day of February, 2011,

ORDERED that Plaintiff's Motion for Summary Judgment [docket #144] is DENIED; and it is further

ORDERED that Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, and Woodward's Motion for Summary Judgment [202] is GRANTED in part and DENIED in part; and it is further

ORDERED that judgment is entered in favor of Defendants Farrell, Hayman, Paterson, Ricci, Sherrer, and Woodward, and all remaining claims against these defendants are DISMISSED with prejudice; and it is further

ORDERED that claims against Defendants Hinman and Ronoghan for denial of adequate medical care brought under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, and the claim for negligent infliction of emotional distress may proceed.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J