NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Matt GREEN,<br><br>    Plaintiff,<br><br>v.<br><br>Jon CORZINE, et al.,<br><br>    Defendants. | Civ. No. 09-1600<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter comes before the Court upon Defendants Abu Ashan, Correctional Medical Services, Inc. ("CMS"), Donique Ivery, Allen Martin, and Jason Pugh's (collectively, "CMS Defendants") Motion to Dismiss, or in the alternative, for Summary Judgment [docket # 103]. The Court has decided the motion upon consideration of the parties' written submissions, without holding oral argument. For the reasons given below, Defendants' motion is granted.

## II. BACKGROUND

Plaintiff is an inmate currently incarcerated at New Jersey State Prison ("NJSP") under the care of the New Jersey Department of Corrections ("DOC"). (Compl. ¶ 58.) He wears extra-wide size 10EEE shoes to accommodate his unusually wide feet. (*Id.*) When he first arrived in New Jersey in 1999, Plaintiff was given size 10 ordinary boots. (*Id.* ¶ 59.) These boots caused blisters and ulcers, and Plaintiff was eventually given a prescription for size 10EEE shoes. (*Id.* ¶¶ 60–61.) He was given a pair of size 10EEE boots and a pair of size 10EEE sneakers, and continued to receive boots and sneakers in this size through 2006. (*Id.* ¶¶ 61–62.)

On August 4, 2006, Defendant Ricci, the administrator of NJSP, ordered a lockdown and search of the facility. (*Id.* ¶ 63.) Plaintiff's unit was searched, and he was forced to leave behind his sneakers and boots. (*Id.* ¶ 65.) When he returned to his cell, his shoes and boots were missing. (*Id.*) Plaintiff submitted a claim for his boots and shoes, and his shoes were returned, but his boots never were. (Green Decl. ¶ 16) [144-1]. Plaintiff was then issued ordinary size 10 boots, which caused Plaintiff problems, (*id.* ¶ 17), so he was temporarily issued ordinary size 10.5 boots until his proper size could be ordered, (Hutton Decl. Ex. B, at Green 11) [73-3]. On September 14, 2006, Plaintiff was informed that his extra-wide boots were being reordered, and he did not complain again from September 28, 2007 until April 29, 2007, when he again requested size 10EEE boots. (*Id.* at Green 11, 13, 15.) Green claims that his improperly-sized boots caused bleeding ulcers and that he developed a limp and began experiencing pain in his ankles, knees, hips, and back. (Compl. ¶ 66.)

On May 14, 2007, Plaintiff received extra-wide, size 10XW boots. (Hutton Decl. Ex. B, at Green 16) [73-3]. The official who issued the boots believed that the size 10XW boots were equivalent to size 10EEE. (*Id.*) Nevertheless, Plaintiff complained that the boots were still too tight and caused him blisters. (*Id.*) On August 27, 2007, Plaintiff sought treatment for the wounds on his feet and he was issued a six-week "lay in" where he would be confined to his cell. (Compl. ¶ 71.) Plaintiff claims that Defendant Martin was aware of Plaintiff's need for size 10EEE footwear but refused to issue Plaintiff a prescription for extra large footwear, and that Martin stated that DOC had instructed him not to write prescriptions for footwear "sizing issues." (*Id.*)

Based on the foregoing allegations, Plaintiff filed a lawsuit against CMS, various CMS employees, as well as several employees of the DOC. Plaintiffs' remaining claims against the

CMS Defendants include constitutional claims brought under 42 U.S.C. § 1983 for cruel and unusual punishment in violation of the Eighth Amendment, a breach of contract claim asserted by Plaintiff as a third-party beneficiary to the contract between CMS and the DOC, and claims for medical malpractice, negligence, and intentional infliction of emotional distress.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a 12(b)(6) motion, a district court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to plaintiff, but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded facts have been identified, a court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)). A claim is only plausible if the facts pleaded allow a court reasonably to infer that the "defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1949).

#### B. Motion for Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will "view the inferences to be drawn from the underlying facts in the light most favorable to the

party opposing the motion." *Id.*; *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More specifically, the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). More than a mere "scintilla of evidence" supporting the non-moving party is required. *Anderson*, 477 U.S. at 252. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Celotex*, 477 U.S. at 323–24.

## IV. ANALYSIS

### A. Section 1983 Claims Against CMS

A defendant cannot be held liable under 42 U.S.C. § 1983 based on a theory of *respondeat superior*. *Bielevicz v. Dubinon*, 915 F.2d 845, 849–50 (3d Cir. 1990). Accordingly, a plaintiff can only bring claims under § 1983 against a non-person entity if that entity maintained a policy or custom that caused the alleged constitutional violations. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). A policy can be said to exist "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict," while a custom refers to "an act that

has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Id.* at 584 (quotations omitted).

Plaintiff's allegations are insufficient to establish an Eighth Amendment violation on the part of CMS. Because Plaintiff cannot premise his claim on a theory of *respondeat superior*, he can only recover from CMS if CMS maintained an unconstitutional policy or custom that caused Plaintiff's injuries. According to the Complaint, the policy of which he complains—that is, not to prescribe specialty footwear—was established by the DOC, not CMS. The fact that CMS passed on instructions which directed specialty and subspecialty care providers not to prescribe certain treatments without approval, in compliance with the DOC's policies, does not make it a potentially responsible policymaker. CMS was not the decisionmaker with respect to any policy, and since the policies of which Plaintiff complains were established by DOC, CMS cannot be held to have tacitly condoned those policies as a CMS-approved custom. Accordingly, summary judgment will be granted in favor of CMS on this claim.

### B. Section 1983 Claims Against Defendants Ahsan, Ivery, Martin, and Pugh

Plaintiff claims that the CMS Defendants denied him adequate medical care in violation of the Eighth Amendment when they refused to provide him with proper footwear. To succeed on such a claim, Plaintiff must demonstrate (1) that defendants were deliberately indifferent to his medical needs, and (2) that those needs were serious.[1] *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is "deliberately indifferent" if the official "knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Deliberate

---

[1] The Third Circuit has defined a "serious medical need" as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one that would result in "a lifelong handicap or permanent loss" if left untreated. *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal citations and quotations omitted). Defendants do not appear to argue that Plaintiff's injuries were not serious, and we therefore do not address this issue.

indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer*, 511 U.S. at 837–38.

Plaintiff's claims cannot survive summary judgment because the policies governing provision of footwear were established by the DOC, not CMS, and those policies place the responsibility of providing footwear squarely on the DOC, not CMS. (Green Decl. Ex. A, at Green 872–73) [144-1]. Plaintiff conceded this in his deposition. (Defs.' Br. in Supp. of Mot. to Dismiss Ex. K, at 119:6–10) [168-6]. The fact that CMS Defendants complied with the DOC policy and directed Plaintiff to seek specialty footwear from the DOC does not make these defendants liable for denial of adequate medical care. Plaintiff seems to suggest that the CMS Defendants are at fault for failing to get the DOC to provide Plaintiff with proper footwear. (*See id*. at 125:11–126:23.) However, even if the CMS Defendants were under such a duty, this claim would still fail because the evidence shows that a CMS administrator sent an email to a DOC official specifically stating that Plaintiff needed proper shoes and that the DOC was responsible for providing them. (Green Decl. Ex. A, at Green 1538) [144-1].

Furthermore, to the extent that Plaintiff believes the actual treatment he received was inadequate, we note that these defendants were continually responsive to Plaintiff's complaints, ordering the necessary examinations, treatments, and referrals to specialists to address his needs. (*see* Green's medical records at docket # 103-4, 103-5.) Courts "will generally not find deliberate indifference when some level of medical care has been offered to the inmate." *Christy v. Robinson*, 216 F. Supp. 2d 398, 413–14 (D.N.J. 2002). Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d

6

754, 762 (3d Cir. 1979) (quotations omitted).  Because Plaintiff was provided with extensive treatment and because he has failed to show how the CMS Defendants have failed to provide him with any treatment that was their responsibility to provide, we will grant summary judgment to the individual CMS Defendants on Plaintiff's denial of adequate medical care claims.

### C. Negligence and Medical Malpractice

Plaintiff's claims for negligence, negligent infliction of emotional distress, and medical malpractice are all premised on the same alleged wrong—the failure to provide Plaintiff with proper footwear.  Each of these causes of action requires either that the Defendants breached a duty or deviated from an acceptable standard of care owed to Plaintiff.  *See Gardner v. Pawliw*, 696 A.2d 599, 608 (N.J. 1997) (discussing medical malpractice); *Portee v. Jaffee*, 417 A.2d 521, 526 (N.J. 1980) (discussing negligent infliction of emotional distress); *Siddons v. Cook*, 887 A.2d 689, 696 (N.J. Super. Ct. App. Div. 2005) (discussing negligence).  Because we find that the CMS Defendants were under no duty to provide Plaintiff with footwear and therefore did not deviate from the standard of care owed to Plaintiff in this regard, we must dismiss these claims as well.

### D. Breach of Contract Claims Against CMS

Finally, we find that Plaintiff cannot assert a claim based on the contract between CMS and the DOC because Plaintiff is not an intended third-party beneficiary of that contract.  A third party can maintain an action based on a contract only if he is a "person for whose benefit the contract is made," N.J.S.A. 2A:15-2, which requires that "the contracting parties have expressly intended for that third-party to receive a benefit which might be enforced in the courts." *Washington v. Corr. Med. Servs.*, 2006 WL 1210522, at *5 (D.N.J. 2006) (quotations omitted). We are not the first court to consider whether an inmate can assert a claim based on the contract

between CMS and the DOC.  Other courts in this District have unanimously concluded that the CMS–DOC contract does not provide an inmate with standing to sue, and we find no reason to depart from their sound logic.  *See Warnett v. Corr. Med. Servs.*, 2008 WL 930739, at *8 (D.N.J. 2008) (citing *Mann v. Barbo*, Civ. No. 00-2215 (D.N.J. July 24, 2001); *Allmond v. McDowell*, Civ. No. 98-3733 (D.N.J. April 16, 2001)).  Accordingly, we dismiss this claim against all Defendants.

## CONCLUSION

For the reasons given above, IT IS on this 22nd day of February, 2011,

ORDERED that Defendants Ashan, Correctional Medical Services, Inc. ("CMS"), Ivery, Martin, and Pugh's (collectively "CMS Defendants") Motion to Dismiss, or in the alternative, for Summary Judgment [docket # 103] is GRANTED; and it is further

ORDERED that judgment is entered in favor of these defendants and all remaining claims against these defendants are DISMISSED with prejudice.
.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J