UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATT GREEN, | : Civil Action No: 09-1600 (AET) (DEA) |
| Plaintiff, | : |
| v. | : |
| JON CORZINE, ET AL., | : |
| Defendants. | : |

## JOINT FINAL PRETRIAL ORDER

The following shall constitute the Final Pretrial Order pursuant to Rule 16 of the Federal Rules of Civil Procedure, and this Final Pretrial Order shall govern the Conduct of the trial of this case. Amendments to this order will be allowed only in exceptional circumstances to prevent manifest injustice.

APPEARANCES:

Matthew S. Barndt, Esq.
Drinker Biddle & Reath LLP
105 College Road East
Princeton, NJ 08648
(609) 716-6634
Trial Counsel for Plaintiff Matt Green

Daniel M. Vannella, DAG
Jennifer S. Hsia, DAG
Department of Law and Public Safety
Division of Law Corrections & State Police Section
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
(609) 292-8550
Trial Counsel for Defendants Peter Ronoghan and Vaughn Hinman.

1.    **Nature of the Action and Jurisdiction of the Court:**

    The nature of this action is denial of adequate medical care and negligent infliction of emotional distress.

    The District Court has original jurisdiction over all civil actions arising under the United States Constitution. 28 U.S.C. § 1331. The District Court has jurisdiction to consider claims under state law so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

2.    **Factual Contentions of Plaintiff, Matt Green:**

    A.    Plaintiff Matt Green, incarcerated in the New Jersey State Prison, contends that, contrary to their duties to him, defendants have intentionally caused plaintiff physical and emotional injury by failing to provide for his legitimate medical need for prescription footwear.

    B.    The Jersey Department of Corrections and defendants are and were required to provide Mr. Green with adequate footwear.  (Green 847-886, 1526-1532; CMS/GREEN-0293 to -0296).

    C.    Mr. Green has a medical prescription which entitles him to receive special wide footwear.  (Green 20, 38, 1163, 1475).

    D.    Mr. Green has size 10EEE feet and requires size 10EEE footwear.  (Green 1538, et al.).

    E.    In August 2006, plaintiff's prescription footwear was confiscated by the Jersey Department of Corrections.  (Green 11, et al.).

    F.    Mr. Green alerted the Jersey Department of Corrections and defendants that he required replacement footwear, but was given improper sized footwear as a replacement.  (Green 11, et al.).

    G.    In December 2007, the medical staff at New Jersey State Prison contacted defendants directly, advised them of Mr. Green's injuries caused by the improper size footwear and of their obligation to provided Mr. Green with size 10EEE footwear.  (Green 30, 1046, 1538).

    H.    Despite this directive, defendants still did not provide Mr. Green with proper size footwear.

    I.    In August 2008, defendant Hinman falsely reported that he had sent size 10EEE shoes to Mr. Green in unit 2A.  (August 21, 2008 Memorandum of Crystal Raupp).

J.     Mr. Green's feet have suffered numerous injuries as a result of the improper size footwear provided to him. (Green 11-17, 21-22, 24-28, 32-33, 39-40, 42-44, 54, 65-66, 76-77, 88-90, 190, 665-666, 668, 754, 937-938, 968-969, 1034, 1037-1038, 1164, 1550, 1652-1665, et al.).

K.     The injuries have been so severe that NJSP doctors ordered Mr. Green on a six week "lay in from work and meals," meaning that he was medically instructed stay off of his feet for six weeks. (Green 35, 1160).

L.     At other times, Mr. Green went without any footwear at all due to the insufficient footwear provided by defendants.

M.     Mr. Green has filed numerous Inmate Remedy Forms describing his injuries and requesting size 10EEE footwear, and sought medical treatment for his injuries. (Green 11-17, 21-22, 24-28, 32-33, 39-40, 42-44, 54, 65-66, 76-77, 88-90, 190, 665-666, 668, 754, 937-938, 968-969, 1034, 1037-1038, 1164, 1550, 1652-1665, et al.).

N.     To date, the NJDOC and defendants have failed to provide Mr. Green with size 10EEE footwear.

O.     This failure is not the result of simple negligence on the part of defendants, but instead is the result of an intentional course of action.

P.     Defendants and the NJDOC have knowingly and intentionally refused to provide Mr. Green size 10EEE shoes, despite being well aware of the fact that their actions have caused him mental and physical pain and injuries.

3.     **Factual Contentions of Defendants, Peter Ronoghan and Vaughn Hinman:**

A.     Defendants contend that they were not deliberately indifferent to any serious medical need of Plaintiff.

B.     Defendants content that they violated no duty to Plaintiff that caused him to suffer severe emotional distress.

C.     Plaintiff cannot demonstrate that he suffered any physical injury as a consequence of any emotional distress he suffered from Defendants' actions between December 17, 2007 and October 2, 2008.

D.     Plaintiff received a prescription for "E wide medical shoes and boots. Size 10." on December 28, 1999. (Green 20, Green 38).

E.     Prior to December 17, 2007, Plaintiff had received footwear sized "XW."

F.     Footwear labeled "XW" corresponds to extra-wide footwear.

G.   Plaintiff never requested that his feet be measured between May 2006 and October 2008, though he was aware that the normal practice was for inmates seeking a foot measurement to request it be done.

H.   While incarcerated at New Jersey State Prison from 1999 to October 2008, Plaintiff never received a medical prescription for size 10EEE footwear.

I.   Plaintiff received size 10XW boots on May 14, 2007.  (Green 1537)

J.   Defendants believed that footwear labeled XW are equivalent to footwear labeled EEE.

K.   Plaintiff's feet were never measured by another individual while he was incarcerated at New Jersey State Prison between May 2006 and October 2008.

L.   On December 17, 2007, Ms. Mary Lemanski, Health Services Manager, sent Defendant Ronaghan an e-mail indicating that the Department of Corrections was to order footwear sized 10EEE, because Plaintiff was developing blisters on his feet, which Plaintiff stated was due to his wearing footwear labeled "XW" as opposed to "10EEE."  (Green 1538)

M.   Upon receiving this e-mail, Defendant Ronaghan  instructed Defendant Hinman to first check if the then-preferred outside footwear vendor for the New Jersey Department of Corrections, Ballows, had boots labeled size "10EEE" available. (Green 1538)

N.   Upon learning a few days later that boots labeled size "10EEE" could not be purchased through Ballows, Defendants Hinman and Ronaghan began to research other outside footwear vendors who could provide boots with that label.

O.   Because Defendant Hinman was not given a computer with Internet access as part of his job as Storekeeper, Defendant Ronaghan assumed the Internet search for outside vendors.

P.   Defendants' efforts to procure boots labeled size "10EEE" for Plaintiff were limited by certain State policies governing special orders from outside vendors.

Q.   Defendants' efforts to procure boots labeled size "10EEE" for Plaintiff were also limited by certain Department of Corrections interests in maintaining prison safety and security.

R.    Although most inmate footwear used by inmates in the Department of Corrections are self-made within the Department, extra wide footwear are not but must be special-ordered from outside vendors.

S.    On March 20, 2008, although Defendant Hinman issued Plaintiff a pair of boots labeled size 11 (Green 1038), Defendants continued to search for an outside vendor that sold acceptable boots sized "10EEE."

T.    On March 21, 2008, Plaintiff submitted a Request and Remedy Form acknowledging that he received size 11 boots, which he said were too big and still too tight in width, and he requested size "10EEE" boots. (Green 28).

U.    On May 2, 2008, Plaintiff was advised that the requested boots were ordered. (Green 28)



V.    ~~Plaintiff appealed the response to the Request and Remedy Form on May 22, 2008. On May 22, 2008, Defendant Hinman stated that as soon as the boots arrive, Plaintiff will receive the boots. (Green 28)~~

W.    On August 12, 2008, Plaintiff submitted a Remedy Form asking about the 10EEE boots. (Green 968)

X.    On August 21, 2008, Defendant Hinman stated that the boots were sent to the 1R Unit on June 20, 2008 in the exchange clothing bag. (Green 968, Green 1533)

Y.    On September 2, 2008, Plaintiff appealed the August 12, 2008 Remedy Form stating that he was on housing unit 2A, not unit 1R. (Green 968)

Z.    On September 8, 2008, Plaintiff was advised that the mistake caused by the change in housing unit assignment would be remedied. (Green 968).

AA.    On September 19, 2008, Defendant Ronaghan sent an e-mail to Shoe Corp. of Birmingham, requesting another boot order.    Defendant Ronaghan's Answer to Second Set of Interrogatories No. 22.

BB.    Jim Calhoun of Shoe Corp. advised Defendant Ronaghan that there was a boot in stock that met the specifications but was a EEEE, one width wider than what Plaintiff requested. Defendant Ronaghan's Answer to Second Set of Interrogatories No. 22.

CC.    The 10EEEE boots arrived at New Jersey State Prison and were issued to Plaintiff on October 2, 2008. (Green 1545).

DD.  Pursuant to a Department-wide policy effective September 21, 2007, State-issued sneakers would no longer be replaced but can be purchased through Commissary, while replacement of inmate boots would be at the discretion of the Storekeeper.  (Green 870)

EE.  Pursuant to a Department-wide policy effective November 1, 2009, though they could be issued sneakers, no Department of Corrections inmates would any longer be reissued boots (Green 871), due to general security and safety issues.

FF.  Plaintiff has on several past occasions requested footwear sized "extra wide."

GG.  Plaintiff is incarcerated for two consecutive life sentences, without parole, for two counts of murder, one count of kidnaping, and one count of unlawful possession of a handgun.

HH.  Treating medical staff at New Jersey State Prison concluded that the specially sized footwear requested by Plaintiff did not qualify as orthotics determined to be necessary for improvement of medical conditions.

II.  Plaintiff suffered an injury to his left knee in 2004, which caused him pain and to develop a limp, and ultimately led to his receiving arthoscopic surgery in March 2007, followed by physical therapy and further medication throughout 2007 and 2008 to deal with continued pain.

4.  **Factual Contentions of Defendant/Third Party Plaintiff:**  Not applicable.

5.  **Factual Contentions of Third Party Defendants:**  Not applicable.

6.  **Stipulated Facts:**

A.  Plaintiff Matt Green is an inmate currently incarcerated at New Jersey State Prison in Trenton, New Jersey.

B.  Defendant Peter Ronaghan was formerly the Business Manager at New Jersey State Prison, having retired from employment with the Department of Corrections on August 1, 2009.

C.  Defendant Vaughn Hinman was formerly the Storekeeper at New Jersey State Prison, having retired from employment with the Department of Corrections on June 1, 2010.

D.  Plaintiff arrived at New Jersey State Prison in 1999, and ever since has remained incarcerated there.

E.  Defendant Hinman sent Plaintiff size 11 boots on March 20, 2008.

F.    Plaintiff was transferred from housing unit 1R to housing unit 2A at New Jersey State Prison on April 15, 2008.

G.    On September 19, 2008, boots sized 10EEEE were ordered from Shoe Corp. of Birmingham, Alabama.

7.    **Statement of Damages Claimed:**

A.    Plaintiff claims compensatory and consequential damages in excess of $200,000 and punitive damages in an amount sufficient to deter similar misconduct in the future.

B.    Plaintiff also seeks declaratory and injunctive relief in the form of a declaration that defendants were deliberately indifferent to Plaintiff's serious medical need and injunctive relief that requires the Department of Corrections to provide Mr. Green with appropriate size 10EEE footwear now and in the future.

8.    **Statement of Legal Issues Presented:**

A.    Whether, based on Defendants' actions from December 17, 2007 to October 2, 2008, (1) Defendants were deliberately indifferent to Plaintiff's medical needs, and (2) that those needs were serious.  See, e.g., Estelle v. Gamble, 429 U.S. 97 (1976).

B.    Whether, applying the same legal analysis presented in (a) above, Defendants violated Plaintiff's analogous New Jersey state constitutional rights as actionable under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.  See, e.g., Chapman v. New Jersey, Civ. No. 08-4130 (AET), 2009 U.S. Dist. LEXIS 75720, *7-8.

C.    Whether (1) defendants' owed a legal duty to Plaintiff; (2) Defendants' negligent conduct from December 17, 2007 to October 2, 2008 was the proximate cause of emotional distress in Plaintiff; and (3) it was reasonably foreseeable that Defendants' negligent conduct would cause genuine and substantial emotional distress or mental harm to average persons.  See, e.g., Decker v. Princeton Packet, Inc., 561 A.2d 1122, 1128-29 (N.J. 1998); Falzone v. Bush, 214 A.2d 12, 17-18 (N.J. 1965).

D.    Whether Plaintiff's emotional distress or mental harm caused by Defendants between December 17, 2007 and October 2, 2008, constituted a permanent loss of a bodily function, permanent disfigurement, or dismemberment where the medical treatment expenses were in excess of $3,600.00.  See, e.g., N.J.S.A 59:9-2d; Knowles v. Mantua Twp. Soccer Ass'n, 823 A.2d 26, 28-29 (N.J. 2003); Kahrar v. Borough of Wallington, 791 A.2d 197, 201 (N.J. 2002).

E.   Whether Defendants' actions between December 17, 2007 and October 2, 2008 constituted discretionary activities for which no liability may be issued for any claims under the New Jersey Tort Claims Act, to wit, negligent infliction of emotional distress.  See, e.g., N.J.S.A. 59:3-2.

F.   Whether any liability that otherwise might be  imposed upon Defendants for state law tort claims, to wit, negligent infliction of emotional distress, should be limited.  See, e.g., N.J.S.A. 59:9-3.1, N.J.S.A. 59:9-2, and N.J.S.A. 59:9-4.

G.   Whether Plaintiff is entitled to injunctive relief.

H.   Whether Plaintiff is entitled to punitive damages as to his federal claims because defendant's conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of Plaintiff.  See, e.g., Savarese v. Agriss, 883 F.2d 1194 (3d Cir. 1989).

I.   Whether Plaintiff is entitled to punitive damages as to his state law claims, by proving with clear and convincing evidence a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences.  See, e.g., Smith v. Whitaker, 734 A.2d 243, 254 (N.J. 1999).

J.   Whether Defendants are entitled to qualified immunity by demonstrating that the constitutional violations Plaintiff alleges were not clearly established rights of which a reasonable person would have known.  See, e.g., Harlow v. Fitzgerald, 457 U.S. 800 (1982).

9.   **Legal Issues, Defenses or Claims to be Abandoned:**

Other than the issues presented in #8 above, Defendants reserve the right to assert any affirmative defenses provided in their Answer, should any unforeseen developments at the time of trial so warrant.

10.   **Exhibits:**

A.   Joint Exhibits

J-1:  Excerpts of Matt Green's prison medical records exchanged in discovery (EMR).

J-2:  E-mail from Mary Lemanski to Peter Ronaghan, dated December 17, 2007.

B.     Plaintiff's Exhibits:

P-1:  Portions of Matt Green's Inmate Remedy Forms.  (Green 11-17, 21-22, 24-28, 32-33, 39-40, 42-44, 937-938, 968-969, 1034, 1037-1038, 1164, 1550, et al.).

P-2:  Portions of Matt Green's Health Services Request Forms.  (Green 45-53, et al.).

P-3:  Prescription for wide medical footwear.  (Green 20, 38, 1163, 1475).

P-4:  N.J.A.C. §§ 10A:14-5.1, 10A:14-5.3. (Green 845-846).

P-5:  NJDOC Internal Management Procedures and Policies regarding provision of footwear.  (Green 847-886; CMS/GREEN-0293 to -0296).

P-6:  December 17, 2007 memorandum from Mary Lemanski to plaintiff Mr. Green.  (Green 30, 1046).

P-7:  August 21, 2008 Social Services Department Memorandum from Crystal Raupp to Christopher Holmes.

P-8:  Medial lay in form.  (Green 35, 1160).

P-9:  Administrative remedy requests, appeals and related forms.  (Green 31, 34, 1159, 1165).

P-10:  Records related to footwear ordered by defendants and NJSP for Mr. Green.  (Green 23, 29, 41, 1035, 1533-1537, 1539-1549).

P-11:  Job descriptions for positions held by defendants at NJDOC. (Green 1526-1532).

P-12:  Defendants' responses to Mr. Green's interrogatories and document requests.

C.     Defendants' Exhibits:

D-1:    Plaintiff's inmate face sheet and progress notes reports, dated July 22, 2009.

D-2:    Health Services Request Forms submitted by Plaintiff.

D-3:    Inmate Request System and Remedy Forms submitted by Plaintiff between January 2008 and October 2008.

D-4:    New Jersey State Prison form G-32, dated September 10, 2008.

D-5:   New Jersey State Prison, Department of Corrections, Receiving Report from Shoe Corp. of Birmingham, dated October 2, 2008.

D-6:   Packing Slip from Shoe Corp. of Birmingham, Inc., dated September 26, 2008.

D-7:   Invoice from Shoe Corp. of Birmingham, Inc., dated September 30, 2008.

D-8:   State of New Jersey Agency Purchase Order, dated September 22, 2008.

D-9:   New Jersey State Prison, Department of Corrections, Procurement Request, dated September 19, 2008.

D-10:  E-mail exchanged between Jim Calhoun and Peter Ronaghan, dated September 19, 2008.

D-11:  New Jersey State Prison form G-32, dated March 20, 2008.

D-12:  New Jersey State Prison form G-32, dated May 14, 2007.

D-13:  New Jersey State Prison Clothing Record Card for M. Green, number TMP1000275.

D-14:  Inmate Request Form submitted by Plaintiff on October 20, 2004.

D-15:  Inmate Request System & Remedy Form submitted by Plaintiff on August 28, 2006.

D-16:  Two (2) Inmate Request System & Remedy Forms submitted by Plaintiff (Case No. 06-09-0058), both on August 30, 2006.

D-17:  Inmate Request System & Remedy Form submitted by Plaintiff on March 10, 2007 (Case No. 07-03-338).

D-18:  Department of Corrections Internal Management Procedure MED.IMHC.12 (effective April 1, 2005).

D-19:  Inmate Request System & Remedy Form submitted by Plaintiff on June 5, 2007.

D-20:  Memorandum from Administrator Michelle R. Ricci to Inmate Population, dated October 1, 2009, re: "State Issued Boots."

D-21: Memorandum from Administrator Michelle R. Ricci to Inmate Population, dated September 21, 2007.

D-22: Excerpts from New Jersey State Prison Inmate's Handbook (revised Oct. 2007).

D-23: Department of Corrections Internal Management Procedure IMM.010.CLO.001 (effective July 1, 2008).

D-24: Inmate Claim for Lost, Damaged, or Destroyed Personal Property submitted by Plaintiff on August 24, 2006.

11. **Additional Discovery:** Discovery in this matter is complete.

12. **Expert Witnesses:** None.

13. **Fact Witnesses:**

A.     Plaintiff intends to call the following fact witnesses:

Matt Green – Will testify about all issues related to his feet and shoes, including his efforts to obtain proper footwear; the actions, inaction and behavior of defendants with respect to his need for special shoes; the pain, discomfort and negative impact on his life caused by the failure to provide proper footwear; and the duration of time that he has not received proper shoes.

Peter Ronoghan – Will testify as to his personal knowledge of Mr. Green's condition; and his efforts, or lack thereof, to provide Mr. Green with proper footwear.

Vaughn Hinman – Will testify as to his personal knowledge of Mr. Green's condition; and his efforts, or lack thereof, to provide Mr. Green with proper footwear.

Mary Lemanski – Will testify as to Mr. Green's proper shoe size and the injuries caused Mr. Green by improper shoes; the notification she provided to defendants of the foregoing facts; and the Department of Correction's responsibility to provide Mr. Green proper shoes.

Crystal Raupp – Will testify regarding her personal knowledge of Mr. Green's request for size 10EEE boots; and statements that Mr. Hinman made about the delivery of boots to Mr. Green.

Officer Davis (first name unknown) – Will testify as to personal knowledge regarding non-delivery of boots to Mr. Green.

Other witnesses needed solely for purposes of
authentication of evidence.

B.    Defendants intend to call the following fact witnesses:

(1) Peter Ronaghan
Defendant - if necessary may be contacted through his attorneys:
Daniel M. Vannella, DAG
Jennifer S. Hsia, DAG
Office of the New Jersey Attorney General
25 Market Street
P.O. Box 112
Trenton, New Jersey
(Mr. Ronaghan will testify as to his former role as Business Manager of
New Jersey State Prison, the prison policies regarding state-issued
clothing and special orders from outside vendors, the manner in which he
addressed Plaintiff's footwear-related complaints between December 17,
2007 and October 2, 2008, and any other relevant issues  remaining from
Plaintiff's complaint against him.)

(2) Vaughn Hinman
Defendant - if necessary may be contacted through his attorneys:
Daniel M. Vannella, DAG
Jennifer S. Hsia, DAG
Office of the New Jersey Attorney General
25 Market Street
P.O. Box 112
Trenton, New Jersey
(Mr. Hinman will testify as to his former role as Storekeeper for New
Jersey State Prison, his role in making special orders for inmate footwear
from outside vendors, the manner in which he addressed Plaintiff's
footwear-related complaints between December 17, 2007 and October 2,
2008, and any other relevant issues remaining from Plaintiff's complaint
against him.)

(3) Jim Calhoun Shoe Corp. of Birmingham, Inc. Birmingham, Alabama
(Mr. Calhoun will testify as to his communications with Defendants in
2008 regarding their efforts to order extra-wide boots that best meet
Plaintiff's demand for 10EEE-sized footwear.)

(4) Christopher Holmes, Associate Administrator
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey
(Mr. Holmes will testify as to relevant prison policies and procedures
governing the inmate remedy form system, the provision of boots and
sneakers to inmates at New Jersey State Prison during the relevant time
period of this complaint, and related policies governing the ability of
Defendants to respond to Plaintiff's demand for 10EEE-sized
footwear between December 17, 2007 and October 2, 2008.)

(5) Brenda Hutton, Executive Assistant
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey
(Ms. Hutton will provide testimony regarding the authentication of
Department of Corrections/New Jersey State Prison records, as well as
explain the meaning of potentially ambiguous abbreviations and codes
contained therein.)

(6) Other witnesses needed solely for purposes of authentication of
evidence.

D.    Defendants Intend to call damages witnesses:

(1) Peter Ronaghan
Defendant - if necessary may be contacted through his attorneys:
Daniel M. Vannella, DAG
Jennifer S. Hsia, DAG
Office of the New Jersey Attorney General
25 Market Street
P.O. Box 112
Trenton, New Jersey
(Mr. Ronaghan will testify as to the relevant issues remaining from
Plaintiff's complaint against him.)

(2) Vaughn Hinman
Defendant - if necessary may be contacted through his attorneys:
Daniel M. Vannella, DAG
Jennifer S. Hsia, DAG
Office of the New Jersey Attorney General
25 Market Street
P.O. Box 112
Trenton, New Jersey
(Mr. Hinman will testify as to the relevant issues remaining from
Plaintiff's complaint against him.)

(3) Ronald S. Glick, M.D.
Lawrence Orthopaedics
4065 Quakerbridge Road
Princeton Junction, New Jersey
(Dr. Glick would testify as to his knowledge of Plaintiff's medical history,
and as to his role in the treatment and rehabilitation of Plaintiff's left knee
injury requiring arthoscopic surgery in March 2007.)

14.    **Deposition testimony to be read:**

The parties do not intend to read into evidence the depositions of any witness,
except to impeach or refresh recollection. The parties reserve the right to read deposition
testimony due to unforeseen events at the time of trial.

15.    **Trial Briefs and Requests to Charge:**

(No later than five days before the date set for trial or at such time as the Court
may direct, each party shall submit:

a. Trial Brief or memorandum with citations and authorities and arguments in
support of the party's position on all disputed issues of law.

b. Proposed Findings of Fact and Conclusions of Law (for Non-Jury cases).

c. Requested Voir Dire Questions.

d. Form of Verdict Sheet (including Special Interrogatories).

16.    **In Limine Motions:**

A.    Plaintiff's proposed in limine motions:

    1.    Motion in limine to exclude evidence of or testimony regarding
Plaintiff's convictions, term of incarceration, prison disciplinary
record, or related topics.

    2.    Motion in limine to exclude evidence or lay opinion testimony on
the issue of whether defendants provided Plaintiff with a shoe size
equivalent to 10EEE.

    3.    Motion in limine to exclude evidence of or testimony regarding an
arthroscopic knee procedure performed on Plaintiff.

B.    Defendants' proposed in limine motions:

1.    Defendants contemplate filing a Motion In Limine, pursuant to Fed. R. Evid. 701 and Fed. R. Evid. 702, to exclude any lay opinion testimony seeking to establish the existence, permanence, or cause of any purported physical, emotional, mental, and/or psychological injuries alleged in Plaintiff's complaint. Return date to be set by the Court.

2.    Defendants contemplate filing a Motion In Limine barring Plaintiff from introducing any expert testimony regarding his injuries, because he has failed to provide an expert report and has failed to identify any experts in discovery. Return date to be set by the Court.

3.    Defendants contemplate filing a Motion In Limine barring introduction of evidence or testimony regarding statements by medical professionals as to footwear sizing issues for Plaintiff, because medical professionals do not have expert knowledge of sizing of shoes or boots. Return date to be set by the Court.

4.    Defendants contemplate filing a Motion In Limine barring introduction of evidence or testimony regarding events occurring outside the time frame of December 17, 2007 to October 2, 2008 for purposes of establishing liability against Defendants.

5.    Defendants contemplate filing a Motion In Limine barring Plaintiff from testifying as to his medical condition subsequent to October 2008; or in the alternative, if Plaintiff is permitted to testify to such, that Defendants be permitted to introduce relevant medical records for the limited purpose of impeachment.

17.   **Bifurcation:**

The issues of liability and damages SHALL NOT be tried separately.

18.   **Estimated Length of Trial:**

The trial is estimated to last approximately two to three days.  The trial date presently assigned is May 23, 2011.

19.   **Copies of Exhibits:**

(Copies of exhibits are to be made for opposing counsel, and a bench book of exhibits is to be delivered to the Judge at the start of trial. If counsel desires to display exhibits to the jury, sufficient copies should be available to provide each juror with a copy; alternatively, enlarged photographic or projected copies may be used.)

## CONCLUDING CERTIFICATION

We hereby certify by the affixing of our signatures to this short form Joint Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this order prior to its submission to the Court. The parties are reminded that they must amend the Pretrial Order additional witnesses or exhibits. Further, it is acknowledged that amendments to the Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

Attorneys for Plaintiff:                    Attorneys for Defendants:

_____          _____

_____          _____

Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this

_____ day of _____, 2011.

_____
UNITED STATES MAGISTRATE JUDGE